964 A.2d 869

RANGE RESOURCES–APPALACHIA, LLC (formerly Great Lakes Energy Partners), Penneco Oil Company, CB Energy, Inc., and Independent Oil and Gas Association of Pennsylvania, Appellees

v.

SALEM TOWNSHIP, Commonwealth of Pennsylvania, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 9, 2008.

Decided Feb. 19, 2009.

Gary A. Falatovich, Greenburg, for Salem Tp., appellant.

Thomas L. Wenger, Wix, Wenger & Weidner, P.C., Harrisburg, for PA State Ass'n of Tp. Sup'rs, appellant amicus curiae.

Jordan Berson Yeager, Doylestown, Curtin & Heefner, L.L.P., Morrisville; Elizabeth Koniers Brown, Pittsburgh, for Nockamixon Tp., et al., appellant amicus curiae.

Walter A. Bunt, Jr., George A. Bibikos, Michael James Ross, K&L Gates, L.L.P., Pittsburgh, for Range Resources, CB Energy, Independent Oil and Gas Ass'n et al., appellees.

Aaron M. Kress, New Kensington, for Range Resources–Appalachia, LLC, et al, appellees.

Dennis A. Whitaker, Harrisburg, Susan P. Shinkman, Pittsburgh, PA Dept. of Environmental Protection, for Dept. of Environmental Protection, appellee amicus curiae.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

### OPINION

Justice SAYLOR.

The primary question raised in this appeal by allowance pertains to the preemptive scope of Pennsylvania's Oil and Gas Act. As such, this decision is issued in conjunction with our disposition in *Huntley & Huntley, Inc. v. Borough Council of the Borough of Oakmont,* 600 Pa. 207, 964 A.2d 855, 2009 WL 413723 (2009), which also addresses the same issue within the context of a somewhat different set of facts.

In 2005, Appellant Salem Township, Westmoreland County (the "Township") enacted a general ordinance directed at regulating surface and land development associated with oil and gas drilling operations. Shortly thereafter, Appellees, oil and gas producers, commenced an action in the common pleas court, seeking declarations that: the ordinance was invalid due to non-compliance with the Municipalities Planning Code ("MPC") (Count I); the ordinance's regulations were preempt-

ed by Pennsylvania's Oil and Gas Act (the "Act") (Count II);[1] the regulations were also preempted by other state and federal enactments (Counts III and IV); the regulations violated due process (Count V); and they effected a regulatory taking (Count VI). Only Count II, relating to Oil and Gas Act preemption, is relevant to this appeal.

After pleadings closed, the parties filed cross-motions for summary judgment. In July 2006, while these motions were pending, the Township enacted, for the first time, comprehensive subdivision and land development legislation, thereby supplanting the earlier ordinance. This new legislation was adopted pursuant to the MPC, and included two appendices. Appendix B (hereinafter, the "Ordinance") comprised a wholesale re-enactment of the oil and gas regulations found in the prior legislation. In addition to its substantive restrictions on oil and gas drilling activities, the Ordinance established a fee for permit applications and provided for criminal penalties upon failure to comply with its terms. The parties stipulated that any decision on the pending motions for summary judgment would affect the validity of the replacement oil and gas regulations contained in the Ordinance, and Appellees withdrew Count I of the complaint.

Acting on the pending motions, the trial court granted partial summary judgment in favor of Appellees on the basis that the Act preempted the Township's oil and gas regulations. The court additionally granted the Township's application for

1. Act of December 19, 1984, P.L. 1140 (as amended, 58 P.S. §§ 601.101–601.605). Preemption is governed by Section 602, which provides:

Except with respect to ordinances adopted pursuant to the ... Municipalities Planning Code, and the ... Flood Plain Management Act, all local ordinances and enactments purporting to regulate oil and gas well operations regulated by this act are hereby superseded. *No ordinances or enactments adopted pursuant to the aforementioned acts shall contain provisions which impose conditions, requirements or limitations on the same features of oil and gas well operations regulated by this act or that accomplish the same purposes as set forth in this act.* The Commonwealth, by this enactment, hereby preempts *and supersedes* the regulation of oil and gas wells as herein defined. 58 P.S. § 601.602 (emphasis added to highlight language supplied by a 1992 legislative amendment).

a determination of finality under Rule of Appellate Procedure 341(c). *See* Pa.R.A.P. 341(c). The Township then appealed to the Commonwealth Court.

The trial court issued an opinion setting forth the rationale for its conclusion that each of the oil and gas regulations challenged in the complaint was preempted by state law. In particular, the court found that the Ordinance requires a permit for all drilling-related activities; regulates the location, design, and construction of access roads, gas transmission lines, water treatment facilities, and well heads; establishes a procedure for residents to file complaints regarding surface and ground water; allows the Township to declare drilling a public nuisance and to revoke or suspend a permit; establishes requirements for site access and restoration; and provides that any violation of the Ordinance is a summary offense that can trigger fines and/or imprisonment. The court then summarized some relevant aspects of the Act's "comprehensive regulatory scheme with regard to the development of oil and gas and coal," including those pertaining to such things as casing requirements, protection of water supplies, safety devices, and the plugging of wells. *Great Lakes Energy Partners v. Salem Township,* No. 8126 of 2005, *slip op.* at 6 (C.P. Westmoreland Sept. 8, 2006) (citing 58 P.S. §§ 601.207–601.210, and *Commonwealth v. Whiteford,* 884 A.2d 364, 368 (Pa.Cmwlth.2005)).

The trial court also enumerated the purposes of the Act as stated by the General Assembly, including: to allow the optimal development of oil and gas resources consistent with the protection of citizens' health, safety, environment, and property; to protect the safety of personnel and facilities employed in gas and oil exploration, development, and storage; to protect the safety and property rights of persons residing in areas where such activities occur; and to protect natural resources. *See id.* at 6–7 (quoting 58 P.S. § 601.102). In light of all of the above, the court found that the Ordinance "places conditions, requirements, or limitations on some of the same features of oil and gas well operations regulated by the Oil and Gas Act," *id.* at 7, and indeed, is even more stringent than the

Act with regard to the manner in which many activities are regulated.[2] The court suggested that the Township was attempting, through the Ordinance, to impose requirements with regard to the location of activities necessarily incident to the development of wells, and that these types of restrictions fall within the purview of the Act and the oversight of the Department of Environmental Protection (the "Department"). *See id.* at 7–8. The trial court ultimately concluded as follows:

> Although the township expresses laudable goals in its concern for the health, safety and property of its citizens, the hazardous nature of oil and gas well drilling operations, and the potential for an adverse impact on environmental resources, those purposes have been addressed by the legislature in its passage of the act. While the township may have traditionally been able to pursue such purposes, once the state has acted pursuant to those purposes, the township is foreclosed from exercising that police power. I would add that the comprehensive nature of the statutory scheme regulating oil and gas well operations reflects a need for uniformity so that the purposes of the legislature can be accomplished.

*Id.* at 8 (citations omitted).

The Commonwealth Court affirmed. *See Great Lakes Energy Partners v. Salem Township,* 931 A.2d 101 (Pa.Cmwlth. 2007) (*en banc*). The court noted that the Township's primary contention on appeal was that the trial court had erred in concluding that, because some of the Ordinance provisions conflicted with the Act, the entire ordinance was invalid. Specifically, the Township maintained that the court should have examined the Ordinance on a provision-by-provision basis to ascertain whether any provisions were severable. The Commonwealth Court did not directly address this claim, but instead, affirmed based on the analysis set forth in the trial court's opinion. *See id.* at 103–04 & n. 8.

**2.** The Township indicates that the court's use of the word "some" implies that other ordinance provisions must be valid. *See* Brief for Appellant at 35. This contention is in error as the court was speaking of the state enactment, not the local one.

In seeking permission to appeal to this Court, the Township questioned whether the Act's preemptive scope is as broad as the trial court indicated—and particularly, whether the items regulated by the Ordinance, including oil and gas well access roads, gas transmission lines, road maintenance agreements, and the location of water cleaning facilities associated with coal bed methane operations, fall under the rubric of "features of oil and gas well operations" for purposes of Section 602 of the Act. This Court allowed appeal here, as in *Huntley,* to address the topic of Oil and Gas Act preemption. We additionally invited the Department to file an amicus brief articulating its view of whether the Act and its associated administrative regulations preempt the local regulations at issue. *See Range Resources–Appalachia, LLC v. Salem Township,* 597 Pa. 60, 950 A.2d 266 (2008) (*per curiam*).

In *Huntley,* we concluded that the Act's preemptive scope is not total in the sense that it does not prohibit municipalities from enacting traditional zoning regulations that identify which uses are permitted in different areas of the locality, even if such regulations preclude oil and gas drilling in certain zones. In reaching this determination, we agreed with the Department's position that the statutory term, "features of oil and gas well operations," refers to the "technical aspects of well functioning and matters ancillary thereto (such as registration, bonding, and well site restoration), rather than the well's location," *Huntley,* 600 Pa. at 223, 964 A.2d at 864, and that the traditional purposes of zoning are distinct from the purposes set forth in the Act, *see id.* at 224, 964 A.2d at 865. We clarified, however, that our holding should not be understood to suggest that any and all zoning regulation of oil and gas development would be allowable under Section 602 of the Act simply because the ordinance in question was enacted pursuant to the MPC. *See id.* at 226 n. 11, 964 A.2d at 866 n. 11 ("We do not, for instance, suggest that the municipality could permit drilling in a particular district but then make that permission subject to conditions addressed to features of well operations regulated by the Act.").

Presently, the Township forwards arguments that overlap to some degree with those of the municipality in the *Huntley* case. It maintains, for example, that local land-use regulations adopted pursuant to the MPC are only preempted to the degree they address the technical, operational aspects of oil and gas drilling, but that they are permissible otherwise so long as their provisions are consistent with ordinary zoning principles. To the extent these assertions subsume the "how-versus-where" distinction articulated in *Huntley*, they are plainly supported by that case's reasoning. In advancing the validity of the Ordinance's comprehensive regulatory scheme, however, the Township suggests that this Court adopt two additional prongs as part of the preemption analysis. Thus, the Township proffers that local regulation of a particular surface activity ancillary to oil and gas drilling should only be deemed preempted if the activity: (a) relates to the technical operations of the oil and gas industry, (b) flows directly from the operation an oil or gas well, and (c) is unique to the oil and gas industry. *See* Brief for Appellant at 9, 31. Under this proposed standard, the Township maintains the Ordinance's regulations pertaining to the submission of site plans, storm water management plans, erosion and sediment control plans, grading of access roads, road bonding requirements, and other related surface disturbance activities or surface elements (such as the placement and subsequent removal of water treatment facilities), are all permissible inasmuch as they comprise traditional local controls over land use.[3]

3. The Township submits the following list as a sample of the items that the Ordinance requires or regulates: (1) the location and grading of access roads from public roads to well sites; (2) the creation of tire cleaning areas along access roads where they intersect with public roads; (3) the slope of access roads for storm water management purposes; (4) the construction of cross pipes under access roads for storm water management purposes; (5) the entry of excess maintenance agreements requiring operators to repair public roads damaged by heavy equipment; (6) the location and grading of gas transmission lines running from the well heads to ensure and maximize surface development; (7) a minimum depth at which transmission lines should be located to ensure they do not interfere with farming or other surface development; (8) the installation of marking ribbons on transmission lines for easy identification to ensure they are not subject to damage or disruption by other excavation in the area; (9) mandatory testing of

The Township also avers that it is affirmatively required or permitted to enact some of these regulations under the provisions of other state enactments such as the Storm Water Management Act,[4] and the Dam Safety and Encroachments Act.[5] As a separate matter, the Township renews its contention that the trial court erred in invalidating the Ordinance wholesale, rather than undertaking a section-by-section analysis of the ordinance against the Act's regulatory provisions in view of the Ordinance's severance clause. *See* Brief for Appellant at 33, 35. The Township then offers its own such analysis and, as to each section of the Ordinance, concludes that all of its provisions are valid, *see id.* at 36–49. The Township's amici add that the Act should be read in a manner consistent with constitutional guarantees relating to the preservation of natural resources, *see* Pa. Const. art. I, § 27 (guaranteeing the "right to clean air, pure water, and the preservation of the natural, scenic, historic and esthetic values of the environment"), giving due weight to the shared state and local responsibilities to protect the environment.

Appellees counter that the Act preempts all local oil and gas regulations that either seek to accomplish the Act's purposes or overlap the Act's regulatory features. *See supra* note 1; 58 P.S. § 601.602. They maintain that the arguments of the Township and its amici address only the latter test and ignore the former. This is relevant, they argue, because the Ordinance is directed exclusively at regulating oil and gas development in the municipality, thereby seeking to accomplish the purposes of the Act. They aver, in this regard, that general local regulations pertaining to the bonding of municipal roads and bridges and the use of municipal facilities by all industries might pass the Act's test for preemption because these potential features of operations are not addressed in the Act; but,

potable water supplies; and (10) the location of water cleaning facilities associated with coal bed methane operations which are not provided for under the Act. *See* Brief for Appellant at 19–20.

4. Act of Oct. 4, 1978, P.L. 864, No. 167 (as amended, 32 P.S. §§ 680.1–680.17).

5. Act of Nov. 26, 1978, P.L. 1375, No. 325 (as amended, 32 P.S. §§ 693.1–693.27).

they argue, an ordinance, such as the one under review, that specifically targets the oil and gas industry, incorporates by reference the provisions of the Act, and "overlap[s] the Act at nearly every turn," is clearly preempted as it amounts to local legislation seeking to accomplish the purposes set forth in the Act. Brief for Appellees at 30–31; *see id.* at 12 (positing that the Ordinance "is, in effect, a 'mini' Oil and Gas Act applicable only within Salem's boundaries"). As regards severance of specific portions of the ordinance, Appellees assert that the Township waived the issue as it did not raise this concern before the trial court in defending against Appellees' motion for summary judgment, and that, in all events the remainder of the ordinance would be unintelligible after severance of the offending provisions.

Finally, Appellees proffer a public and legislative policy rationale for invalidating the ordinance. They assert that the statewide economic benefits of developing Pennsylvania's vast oil and natural gas reserves can best be realized if producers are required to comply with a uniform regulatory scheme administered by the Department. In this respect, they emphasize their view that fashioning and maintaining such a uniform regulatory scheme without substantial interference from local non-expert governing bodies is a primary legislative objective underlying the Act. Thus, Appellees contend that any ruling by this Court which permits the Commonwealth's thousands of local governmental units to establish their own substantive oil and gas regulations (as the Township has done) would undermine the Act and its broad policy goals by effectively removing the regulation of the oil and gas industry from the expert statewide regulators charged with its oversight. *Cf. Hydropress Envtl. Servs. v. Township of Upper Mt. Bethel,* 575 Pa. 479, 494, 836 A.2d 912, 921 (2003) (Castille, J., joined by Saylor and Eakin, JJ., concurring and dissenting) ("[T]he notion that the General Assembly contemplated that a subject such as [that addressed by the Solid Waste Management Act] should be subject to the inevitable balkanization that would follow from permitting onerous regulations propounded by the

myriad of local governmental entities, unskilled in this area, which exist in this Commonwealth, is implausible.").

The Department agrees with Appellees' position regarding the need for statewide uniformity in the regulation of the oil and gas industry. It highlights that the Act and its associated administrative regulations already provide a comprehensive framework for permitting, bonding, registering, operating, and plugging oil and gas wells, and develops that any municipal ordinance contradictory to, or inconsistent with, the state statutory and regulatory scheme cannot be sustained under general rules of preemption. While the Department qualifies its advocacy by recommending—as in *Huntley*—an interpretation of the Act that leaves room for municipal regulations bearing only a tangential relationship to oil and gas drilling and extraction, it avers that the common pleas court and the Commonwealth Court reached the correct result in this case because "the purposes of the Ordinance are duplicative of the purposes of the Act," Brief for Department as Amicus Curiae at 12, and are thus preempted.

Upon review, we find that the Ordinance reflects an attempt by the Township to enact a comprehensive regulatory scheme relative to oil and gas development within the municipality. *Accord* Brief for the Department as Amicus Curiae at 11 ("[T]he ordinance covers the full panoply of issues related to oil and gas drilling."). Indeed, there are numerous aspects of the Ordinance's regulations pertaining to features of well operations that substantively overlap with similar regulations set forth in the Act, falling under the express preemptive language of Section 602.[6] For example, the Ordinance pur-

6. We agree with Appellees that the Township's proposed three-prong test for statutory preemption is "divorced from the language of the Act and unreasonably narrow." Brief for Appellees at 33. The Act does not indicate that preemption is only accomplished if the regulated activity is unique to the oil and gas industry and flows directly from the operation of a well. Rather, it states more generally that no feature of oil and gas well operations may be subject to any further conditions, requirements, or limitations by MPC-enabled local legislation. *See* 58 P.S. § 601.602. Here, the concept of a "feature of" oil and gas well operations is statutorily limited only by the qualifier, "regulated by this Act." 58 P.S. § 601.602. On its face, therefore, it is potentially broad

ports to: establish permitting procedures specifically for oil and gas wells, *see* Ordinance, Article I, § II; RR. 537b; impose bonding requirements before drilling can begin, *see id.,* § III(A)(6); RR. 540b; regulate well heads, including the capping of the same once they are no longer in use, *see id.,* § III(D)(2); RR. 543b; and regulate site restoration after drilling operations cease, *see id.,* § III(A)(5); RR. 543b. The Ordinance's permitting and bonding procedures constitute a regulatory apparatus parallel to the one established by the Act and implemented by the Department. *See* 58 P.S. § 601.215 (relating to well bonding); *id.,* §§ 201–202 (relating to drilling permits and objections thereto); *id.,* § 203 (relating to well registration); *id.,* § 204 (relating to wells attaining inactive status). Likewise, the topic of site restoration is addressed by the Act, *see id.,* § 206, as is the subject of well casing and plugging upon cessation of use, *see id.,* §§ 207, 210.

As developed by the trial court, moreover, in many instances the Ordinance's requirements are even more stringent than the corresponding provisions of the Act.[7] Further, some of the ordinance's provisions appear to impose excess costs on entities engaged in oil and gas drilling, such as the requirement of restoring nearby streets to their pre-drilling conditions re-

enough to include items that flow both directly and indirectly from the operation of an oil or gas well, as well as features that are shared by other industries.

7. One example highlighted by Appellees pertains to the protection of water supplies in the vicinity of drilling operations. The Act and its associated administrative regulations specify that any well operator who affects a water supply through pollution or diminution of the amount of available water must restore or replace the affected supply with an alternate source of water. *See* 58 P.S. § 601.208(a); 25 Pa.Code. § 78.52. Well operators may, however, conduct pre-drilling water testing to establish a defense to future charges of water pollution, *see id.,* § 601.208(d), or they may elect not to conduct such testing and risk future liability. Under the Ordinance, pre-operation water testing is mandatory relative to all water sources within 1,000 feet of a well site. *See* Ordinance Section II (relating to required approvals); RR. 537b. Because the Ordinance thus forbids an operator from foregoing pre-drilling water testing and risking liability, while the Act allows such a course of action, the Ordinance is in direct conflict with the Act. *See Huntley*, 600 Pa. at 220, 964 A.2d at 862 (observing that "local legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow").

gardless of whether the wear and tear on such roadways was caused by vehicles associated with drilling activities. *See* Brief for Appellant at 42 (quoting Ordinance, Article I, § III(A)(9); R.R. 541b).

Notably, as well, the Ordinance does not guarantee issuance of a permit even if the applicant complies with all requirements, stating expressly that it reflects only the "minimum terms acceptable" and that, upon compliance, a conditional permit "may" be issued by the Township, "subject to final approval by the Board of Supervisors at a public meeting." Ordinance, Article I, § 2(C); R.R. 538b. While the Township may be correct in arguing that there are some aspects of the Ordinance that are not expressly covered directly by the Act, even these are bound up with the overall regulatory scheme which includes strict permitting and penalty provisions, and phrased in such general terms—e.g., "the most direct and feasible means," "shall not unreasonably restrict access," etc.—as to provide the Township with virtually unbridled discretion to deny permission to drill. This is in stark contrast to, and in conflict with, the Act's more permissive approach. *See, e.g.,* 58 P.S. 601.201(f) (providing that "the well operator *may proceed* with the drilling of the well" upon issuance of the departmental permit and the giving of 24 hours' notice to various interested parties (emphasis added)). Hence, we find that the Ordinance is qualitatively different from the zoning enactment at issue in *Huntley* that sought only to control the location of wells consistent with established zoning principles.[8]

**8.** This also answers the Township's argument predicated upon its obligations under other statutes such as the Storm Water Management Act. While such enactments may encourage local management of certain environmental problems, Appellants have not shown that they authorize implementation of administrative controls specifically targeted at the oil and gas industry. Thus, because the Oil and Gas Act is industry-specific, its express preemptive language remains unaffected by provisions in other statutes generally imposing duties upon localities that are not phrased with particular reference to oil and gas development. *Cf.* 1 Pa.C.S. § 1933 (where two statutes conflict, special provisions prevail over general ones). Consistent with our treatment of the zoning controls at issue in *Huntley,* however, our holding here should

We also agree with Appellees that the Township's advocacy is deficient in that it fails to account for the independent statutory basis for preemption relative to local ordinances that seek to accomplish the same objectives as are set forth in the Act.[9] As developed in *Huntley* and by the trial court, the Act's purposes, broadly speaking, pertain to optimizing oil and gas development, ensuring the safety of the personnel and facilities used in such development, protecting the property rights of neighboring landowners, and preserving the natural environment. *See Huntley,* 600 Pa. at 223–24, 964 A.2d at 865 (quoting 58 P.S. § 601.102). Similarly, the Ordinance focuses, not on zoning or the regulation of commercial or industrial development generally, but solely on regulating oil and gas development, with specific objectives that include "enabling continuing oil and gas drilling operations . . . while ensuring the orderly development of property through the location of access ways, transportation lines and treatment facilities necessarily associated with the same." Ordinance, Preamble; RR. 535b. The goals of the Ordinance also subsume protecting the development of neighboring properties, *see id.,* and protecting natural resources. As the common pleas court expressed, these may all be laudable ends, but they are addressed by the Act.

Finally, the Township urges this Court to uphold the Ordinance to the degree it controls ancillary features of oil and gas operations. *See* Brief for Appellants at 39–49 (arguing that the Ordinance is valid to the extent it restricts water treatment facilities, oil and gas transmission lines, and the location, grading and construction of access roads). Even to the extent these provisions pertain to items that are not specifically addressed in the Act, within the framework of an ordinance specifically directed to oil and gas well operations, they plainly constitute an impermissible form of regulation, as the last sentence of Section 602 prohibits even such restrictions as

not be construed to preclude local regulations duly enacted pursuant to other state laws that incidentally affect oil and gas development.

9. In their brief to this Court, Appellees repeatedly underscore the Township's omission in this regard. The Township has elected not to file a reply brief contesting this facet of Appellees' argumentation.

these. *See* 58 P.S. § 601.602 ("The Commonwealth, by this enactment, hereby preempts and supersedes the regulation of oil and gas wells as herein defined."); *see also supra* note 6.

In sum, not only does the Ordinance purport to police many of the same aspects of oil and gas extraction activities that are addressed by the Act, but the comprehensive and restrictive nature of its regulatory scheme represents an obstacle to the legislative purposes underlying the Act, thus implicating principles of conflict preemption. *See generally Huntley,* 600 Pa. at 220 n. 6, 964 A.2d at 863 n. 6 (observing that precepts of conflict preemption apply to municipal laws that obstruct the full goals of the state legislature); *Nutter v. Dougherty,* 595 Pa. 340, 345–46, 938 A.2d 401, 404 (2007) (local laws that contradict or contravene state laws are preempted under the rubric of conflict preemption). Furthermore, its stated purposes overlap substantially with the goals as set forth in the Oil and Gas Act, thus implicating the second statutory basis for express preemption of MPC-enabled local ordinances. In view of the Ordinance's focus solely on regulating oil and gas drilling operations, together with the broad preemptive scope of Section 602 of the Act with regard to such directed local regulations, we agree with the common pleas court's conclusion that each of the oil and gas regulations challenged in Appellees' complaint is preempted by the Oil and Gas Act and its associated administrative regulations.

For the reasons stated, the order of the Commonwealth Court is affirmed.

Chief Justice CASTILLE, and Justices EAKIN, BAER, TODD, McCAFFERY and Justice GREENSPAN join the opinion.