**PENNECO OIL COMPANY, INC., Range Resources–Appalachia, LLC and the Independent Oil & Gas Association of Pennsylvania, Appellants**

v.

**The COUNTY OF FAYETTE, Pennsylvania and the Office of Planning, Zoning and Community Development of Fayette County, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued June 21, 2010.
Decided July 22, 2010.
Reargument Denied Sept. 14, 2010.*

---

* McGinley, J., did not participate in this decision.

Richard DiSalle, Pittsburgh, for appellants.

Marie Milie Jones, Pittsburgh, for appellees.

BEFORE: LEADBETTER, President Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Penneco Oil Company, Inc., Range Resources–Appalachia, LLC & Independent Oil & Gas Association of Pennsylvania (hereinafter collectively referred to as "Penneco") appeal from the December 9, 2009, order of the Court of Common Pleas of Fayette County (trial court) granting the motion for summary judgment filed by the County of Fayette, Pennsylvania and the Office of Planning, Zoning and Community Development of Fayette County, Pennsylvania (hereinafter collectively referred to as "Fayette County") and denying Penneco's motion for summary judgment. We affirm.

The following issues raised in this appeal are purely questions of law:

(1) Whether the regulation of oil and gas wells by the Fayette County Zoning Ordinance is preempted by the Oil and Gas Act[1] (Act); and

(2) Whether the trial court erred in holding that the Zoning Ordinance does not specifically target the oil and gas industry and that the specific provisions of the Zoning Ordinance regarding the location of oil and gas wells, the issuance of zoning certificates and special exceptions are not exclusively directed at oil and gas well drilling; and in holding that oil and gas wells are referenced

---

1. Act of December 19, 1984, P.L. 1140, *as* *amended,* 58 P.S. §§ 601.101–601.605.

only within the "special exceptions" section of the Zoning Ordinance.

 The facts are as follows. On November 1, 2006, Fayette County adopted a Zoning Ordinance. On or about August 7, 2007, Penneco filed a complaint against Fayette County and on or about May 5, 2008, Penneco filed, by consent, an amended complaint primarily alleging that the Zoning Ordinance is preempted by the Act and requesting that the trial court declare the Zoning Ordinance invalid. Fayette County filed an answer. The parties agreed by stipulation to forego discovery and cross motions for summary judgment were filed. The trial court determined that the Zoning Ordinance was not preempted by the Act based on two recent Pennsylvania Supreme Court cases: *Huntley & Huntley, Inc. v. Borough Council of the Borough of Oakmont*, 600 Pa. 207, 964 A.2d 855 (2009), and *Range Resources v. Salem Township*, 600 Pa. 231, 964 A.2d 869 (2009). This appeal followed.[2]

Pursuant to Section 102 of the Act, the purposes of the Act are to:

(1) Permit the optimal development of the oil and gas resources of Pennsylvania consistent with the protection of the health, safety, environment and property of the citizens of the Commonwealth.

(2) Protect the safety of personnel and facilities employed in the exploration, development, storage and production of natural gas or oil or the mining of coal.

(3) Protect the safety and property rights of persons residing in areas where such exploration, development, storage or production occurs.

(4) Protect the natural resources, environmental rights and values secured by the Pennsylvania Constitution.

58 P.S. § 601.102. Section 602 of the Act sets forth an express exemption clause:

Except with respect to ordinances adopted pursuant to the act of July 31, 1968 (P.L. 805, No. 247), known as the Pennsylvania Municipalities Planning Code, and the act of October 4, 1978 (P.L. 851, No. 166), known as the Flood Plain Management Act, all local ordinances and enactments purporting to regulate oil and gas well operations regulated by this act are hereby superseded. No ordinances or enactments adopted pursuant to the aforementioned acts shall contain provisions which impose conditions, requirements or limitations on the same features of oil and gas well operations regulated by this act or that accomplish the same purposes as set forth in this act. The Common-

---

2. This Court exercises *de novo* review that is plenary in scope when reviewing pure questions of law. *Huntley.* As pointed out by our Supreme Court in *Huntley*, 600 Pa. at 220, 964 A.2d at 862–63:

Municipalities are creatures of the state and have no inherent powers of their own. Rather, they "possess only such powers of government as are expressly granted to them and as are necessary to carry the same into effect." *City of Philadelphia v. Schweiker*, 579 Pa. 591, 605, 858 A.2d 75, 84 (2004) (quoting *Appeal of Gagliardi*, 401 Pa. 141, 143, 163 A.2d 418, 419 (1960)). Even where the state has granted powers to act in a particular field, moreover, such powers do not exist if the Commonwealth preempts the field. *See United Tavern Owners of Philadelphia v. Philadelphia School District*, 441 Pa. 274, 279, 272 A.2d 868, 870 (1971). The preemption doctrine establishes a priority between potentially conflicting laws enacted by various levels of government. Under this doctrine, local legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow. *See generally Liverpool Township v. Stephens*, 900 A.2d 1030, 1037 (Pa.Cmwlth.2006) (quoting *Duff v. Northampton Township*, 110 Pa.Cmwlth. 277, 287, 532 A.2d 500, 504 (1987)). Additionally, a local ordinance may not stand as an obstacle to the execution of the full purposes and objectives of the Legislature.

wealth, by this enactment, hereby preempts and supersedes the regulation of oil and gas wells as herein defined. 58 P.S. § 601.602.

It was in *Huntley* that our Supreme Court first had the occasion to interpret the preemptive language of Section 602 of the Act. Therein, Huntley sought to drill and operate a natural gas well on residential property located in an R–1 (single-family) residential zoning district within the Borough of Oakmont. The Department of Environmental Protection issued a permit approving the drilling of the well on the residential property. Thereafter, the Borough of Oakmont notified Huntley that drilling for natural gas constituted the extraction of minerals, which is only permitted in an R–1 zoning district as a conditional use. As such, Huntley perfected a conditional use application. At the public hearing held before the Borough Council on the conditional use application, Huntley contended, *inter alia,* that the Borough of Oakmont was preempted from restricting the location of the operation of the natural gas well by the Section 602 of Act. The Borough Council concluded that the Act did not preempt the Borough's power to restrict the location of gas drilling and well heads.

The trial court affirmed and, in an *en banc* decision this Court reversed holding that the Act did preempt the zoning ordinance. *See Huntley & Huntley v. Borough Council of Borough of Oakmont,* 929 A.2d 1252 (Pa.Cmwlth.2007). The Borough of Oakmont and Borough Council, as well as several individual objectors, appealed to the Supreme Court. The Supreme Court granted allocatur primarily to address the preemption issue.[3]

The Supreme Court recognized that Section 602 of the Act contains express preemption language which totally exempts local regulation of oil and gas development except with regard to municipal ordinances adopted pursuant to the Municipalities Planning Code (MPC) as well as the Flood Plain Management Act. *Huntley,* 600 Pa. at 221, 964 A.2d at 863. The Supreme Court further recognized that with regard to such ordinances, the express preemption command was not absolute. *Id.* Accordingly, the Supreme Court concluded that its interpretive task was "to examine the particular wording of [Section 602], together with any other relevant aspect of the statute, in order to determine whether the Legislature intended to leave room for localities to designate certain zoning districts (such as residential ones) where oil and gas wells may be prohibited as a general matter." *Id.*

Upon review of the statutory language of Section 602 of the Act, the Supreme Court found that the "reference to 'features of oil and gas well operations regulated by this act' pertains to technical aspects of well functioning and matters ancillary thereto (such as registration, bonding, and well site restoration), rather than the well's location." *Id.* at 223, 964 A.2d at 864. The Supreme Court found further, after a review of the Act's purposes and those of the zoning ordinance in question, that the challenged zoning restrictions did not accomplish the same purposes as set forth in Section 102 of the Act, 58 P.S. § 601.102. *Id.* The Supreme Court pointed out that the traditional purposes of zoning are distinct from the purposes set forth in the Act.[4] *Id.* at 224, 964 A.2d at 865. The

---

3. *See Huntley & Huntley, Inc. v. Borough Council of Oakmont,* 597 Pa. 62, 950 A.2d 267 (2008).

4. Specifically, the Supreme Court stated:
By way of comparison, the purposes of zoning controls are both broader and narrower in scope. They are narrower be-

Supreme Court stated that while there was some overlap between the goals of the zoning ordinance and the purposes set forth in the Act, most particularly in the area of protecting public health and safety, the most salient objectives underlying restrictions on oil and gas drilling in residential districts appeared to be those pertaining to preserving the character of residential neighborhoods and encouraging beneficial and compatible land uses. *Id.* As such, the Supreme Court held that, "absent further legislative guidance, . . . the Ordinance serves different purposes from those enumerated in the [Act], and hence, that its overall restriction on oil and gas wells in R–1 districts is not preempted by that enactment." *Id.* at 225, 964 A.2d at 866.

However, the Supreme Court clarified that its holding "should not be understood to imply that any and all [zoning] regulation of oil and gas development . . . would

be permissible [under Section 602 of the Act] simply because it is zoning legislation enacted pursuant to the MPC." *Id.* at 226 n. 11, 964 A.2d at 866 n. 11. Accordingly, the Supreme Court reversed this Court's decision insofar as it held that the Act preempted the zoning ordinance in question. *Id.* at 230, 964 A.2d at 869.

In *Range Resources/Salem Township,* our Supreme Court was again called upon to address the preemptive scope of the Act. Salem Township, Westmoreland County, enacted a general ordinance directed at regulating surface and land development associated with oil and gas drilling operations. Range Resources filed a declaratory action with the trial court seeking a declaration that the ordinance was invalid because, *inter alia,* it was preempted by the Act. The trial court found that the ordinance's oil and gas regulations were preempted by the Act.[5]

cause they ordinarily do not relate to matters of statewide concern, but pertain only to the specific attributes and developmental objectives of the locality in question. However, they are broader in terms of subject matter, as they deal with all potential land uses and generally incorporate an overall statement of community development objectives that is not limited solely to energy development. *See* 53 P.S. § 10606; *see also* [53 P.S.] § 10603(b) (reflecting that, under the MPC zoning ordinances are permitted to restrict or regulate such things as the structures built upon land and watercourses and the density of the population in different areas). *See generally* Tammy Hinshaw & Jaqualin Peterson, 7 SUMM. PA. JUR. 2D PROPERTY § 24:12 ("A zoning ordinance reflects a legislative judgment as to how land within a municipality should be utilized and where the lines of demarcation between the several use zones should be drawn."). More to the point, the intent underlying the Borough's ordinance in the present case includes serving police power objectives relating to the safety and welfare of its citizens, encouraging the most appropriate use of land throughout the borough, conserving the value of property, minimiz-

ing overcrowding and traffic congestion, and providing adequate open spaces. *See* Ordinance § 205–2(A).
*Huntley,* 600 Pa. at 224, 964 A.2d at 865.

5. Specifically, the trial court found that the ordinance required a permit for all drilling-related activities; regulated the location, design, and construction of access roads, gas transmission lines, water treatment facilities, and well heads; established a procedure for residents to file complaints regarding surface and ground water; allowed Salem Township to declare drilling a public nuisance and to revoke or suspend a permit; established requirements for site access and restoration; and provided that any violation of the ordinance was a summary offense that can trigger fines and/or imprisonment. *Range Resources/Salem Township,* 600 Pa. at 234, 964 A.2d at 871. The trial court also "summarized some relevant aspects of the Act's 'comprehensive regulatory scheme with regard to the development of oil and gas and coal,' including those pertaining to such things as casing requirements, protection of water supplies, safety devices, and the plugging of wells." *Id.* (quoting *Great Lakes Energy Partners v. Salem Township,* (C.P. Westmoreland

*Range Resources/Salem Township,* 600 Pa. at 234, 964 A.2d at 871. The trial court determined that the ordinance placed conditions, requirements, or limitations on some of the same features of oil and gas well operations regulated by the Act and was even more stringent than the Act with regard to the manner in which many activities were regulated. *Id.* at 234–35, 964 A.2d at 871. In an *en banc* decision, this Court affirmed the trial court on appeal. *See Great Lakes Energy Partners v. Salem Township,* 931 A.2d 101 (Pa.Cmwlth.2007). The Township further appealed to our Supreme Court.[6]

In disposing of the Township's appeal, the Supreme Court restated its conclusion in *Huntley* that "the Act's preemptive scope is not total in the sense that it does not prohibit municipalities from enacting traditional zoning regulations that identify which uses are permitted in different areas of the locality, even if such regulations preclude oil and gas drilling in certain zones." *Range Resources/Salem Township,* 600 Pa. at 236, 964 A.2d at 872. The Supreme Court reiterated its holding "that the statutory term, 'features of oil and as well operations,' refers to the 'technical aspects of well functioning and matters ancillary thereto (such as registration, bonding, and well site restoration), rather than the well's location,' and that the traditional purposes of zoning are distinct from the purposes set forth in the Act." *Id.* (quoting *Huntley,* 600 Pa. at 223, 964 A.2d at 865).

Upon review of the challenged zoning ordinance and the provisions of the Act, the Supreme Court found in *Range Resources/Salem Township* that the ordi-

nance reflected an attempt by Salem Township to enact a comprehensive regulatory scheme relative to the oil and gas development within the municipality. *Id.* at 240, 964 A.2d at 875. The Supreme Court pointed out that the ordinance's regulations pertaining to features of well operations substantively overlapped with similar regulations set forth in the Act, which fell under the express preemptive language of Section 602 of the Act. *Id.* The Supreme Court set forth the following examples of such overlap: (1) the ordinance established permitting procedures specifically for oil and gas wells; (2) the ordinance imposed bonding requirements before drilling could begin; (3) the ordinance regulated well heads, including the capping of the same once they are no longer in use; and (4) the ordinance regulated site restoration after drilling operations ceased. *Id.* at 240–41, 964 A.2d at 875.

The Supreme Court opined further that the ordinance's "permitting and bonding procedures constitute a regulatory apparatus parallel to the one established by the Act and implemented by the Department [of Environmental Protection]. *See* 58 P.S. § 601.215 (relating to well bonding); [58 P.S.] §§ 601.201–202 (relating to drilling permits and objections thereto); [58 P.S.] § 601.203 (relating to well registration); [58 P.S.] § 601.204 (relating to wells attaining inactive status). Likewise, the topic of site restoration is addressed by the Act, see [58 P.S.] § 601.206, as is the subject of well casing and plugging upon cessation of use, *see* [58 P.S.] §§ 601.207, 210." *Id.*

---

Sept. 8, 2006) (citing 58 P.S. §§ 601.207–601.210, and *Commonwealth v. Whiteford,* 884 A.2d 364, 368(Pa.Cmwlth.2005))). The trial court also enumerated the purposes of the Act as stated by the General Assembly in Section 102 of the Act, 58 P.S. § 601.102.

**6.** Appeal granted *sub nom* at *Range Resources v. Salem Township,* 597 Pa. 60, 950 A.2d 266 (2008).

The Supreme Court concluded further that the ordinance's requirements were even more stringent than the corresponding provisions of the Act; that the ordinance's provisions appeared to impose excess costs on entities engaged in oil and gas drilling; that the ordinance did not guarantee issuance of a permit even if the applicant complied with all requirements; and that the ordinance's overall regulatory scheme provided Salem Township with virtually unbridled discretion to deny permission to drill, which was in stark contrast to, and in conflict with, the Act's more permissive approach. *Id.* at 242, 964 A.2d at 876. Accordingly, the Supreme Court found that the challenged ordinance was qualitatively different from the zoning enactment at issue in *Huntley* that sought only to control the location of the wells consistent with established zoning principles.[7] *Id.*

The Supreme Court summarized its holding as follows:

> [N]ot only does the Ordinance purport to police many of the same aspects of oil and gas extraction activities that are addressed by the Act, but the comprehensive and restrictive nature of its regulatory scheme represents an obstacle

to the legislative purposes underlying the Act, thus implicating principles of conflict preemption. *See generally Huntley*, 600 Pa. at 220 n. 6, 964 A.2d at 863 n. 6 (observing that precepts of conflict preemption apply to municipal laws that obstruct the full goals of the state legislature); *Nutter v. Dougherty*, 595 Pa. 340, 345–46, 938 A.2d 401, 404 (2007) (local laws that contradict or contravene state laws are preempted under the rubric of conflict preemption). Furthermore, its stated purposes overlap substantially with the goals as set forth in the Oil and Gas Act, thus implicating the second statutory basis for express preemption of MPC-enabled local ordinances. In view of the Ordinance's focus solely on regulating oil and gas drilling operations, together with the broad preemptive scope of Section 602 of the Act with regard to such directed local regulations, we agree with the common pleas court's conclusion that each of the oil and gas regulations challenged in Appellees' complaint is preempted by the Oil and Gas Act and its associated administrative regulations.

*Id.* at 244, 964 A.2d at 877.

■ With foregoing Supreme Court decisions as guidance, we now turn to the

---

7. The Supreme Court also concluded that Salem Township's advocacy was deficient in that it failed to account for the independent statutory basis for preemption relative to local ordinances that seek to accomplish the same objectives as are set forth in the Act. *Range Resources/Salem Township*, 600 Pa. at 243, 964 A.2d at 876. The Supreme Court explained as follows:

> As developed in *Huntley* and by the trial court, the Act's purposes, broadly speaking, pertain to optimizing oil and gas development, ensuring the safety of the personnel and facilities used in such development, protecting the property rights of neighboring landowners, and preserving the natural environment. *See Huntley*, 600 Pa. at 223, 964 A.2d at 865 (quoting 58 P.S. § 601.102). Similarly, the Ordinance fo-

cuses, not on zoning or the regulation of commercial or industrial development generally, but solely on regulating oil and gas development, with specific objectives that include "enabling continuing oil and gas drilling operations ... while ensuring the orderly development of property through the location of access ways, transportation lines and treatment facilities necessarily associated with the same." Ordinance, Preamble; RR. 535b. The goals of the Ordinance also subsume protecting the development of neighboring properties, *see id.*, and protecting natural resources. As the common pleas court expressed, these may all be laudable ends, but they are addressed by the Act.

*Id.*, 964 A.2d at 876–77.

primary issue presented herein: whether the regulation of oil and gas wells by the Fayette County Zoning Ordinance is preempted by the Act. Penneco contends that the Zoning Ordinance runs afoul of the Act for several reasons. First, the Zoning Ordinance provides that deep mining and surface mining in Fayette County are permitted as of right in certain zoning districts while oil and gas operations in those same zoning districts may be permitted only by way of special exception.

Second, the Zoning Ordinance purports to give the zoning hearing board discretion to attach additional conditions to oil and gas operations "in order to protect the public's health, safety and welfare." Penneco contends that this is clearly covered by the Act and the provisions of the Zoning Ordinance covering oil and gas operations are preempted by the Act.

Third, Penneco contends that Section 1000–1004 of the Zoning Ordinance requires that an oil and gas well operator obtain costly well permits in contravention of the explicit and extensive permitting requirements of the Act. Fourth, since the grant of a special exception is by the Zoning Hearing Board, the Zoning Ordinance does not guarantee issuance of a permit even if the application complies with all requirements. Penneco contends that the issuance is discretionary resulting in the possibility that the Zoning Hearing Board would impose conditions governed by the Act such as road bonding, requirements before drilling begins, regulation of well heads and for site restoration after drilling operations cease.

Penneco points out that the U.S. District Court for the Western District of Pennsylvania also recently ruled on an issue similar to the instant matter and held that the almost unbridled discretion to deny permission to drill established by a local ordinance was in conflict with the Act's more permissive approach to drilling and therefore was preempted by the Act. *See Range Resources–Appalachia, LLC v. Blaine Township,* 2009 WL 3515845 (W.D. Pa., No. 09–355, filed October 29, 2009). Penneco points out further that our Supreme Court in *Range Resources/Salem Township,* 600 Pa. at 242, 964 A.2d at 876, held that the arbitrary authority to deny permission to drill is preempted when "[t]he Ordinance does not guarantee issuance of a permit even if the applicant complies with all the requirements, stating expressly that ... upon compliance, a conditional permit 'may' be issued by the Township, 'subject to final approval by the Board of Supervisors at a public meeting.'" Penneco argues that this same arbitrary authority is found in the Fayette County's Zoning Ordinance because it does not guarantee issuance of a permit even if the application complies with all requirements of the Act; therefore, the Zoning Ordinance is preempted by the Act.

Finally, Penneco argues that the purposes of the Act preempt the purposes of the Zoning Ordinance. Penneco points out that the Supreme Court has held that MPC enabled local ordinances are preempted to the extent that they either contain provisions which impose conditions, requirements or limitations on the same features of oil and gas well operations regulated by the Act or accomplish the same purposes as set forth in the Act. Penneco contends that there is an obvious overlap of the purposes of the Act and the purposes of the Zoning Ordinance; therefore, the Zoning Ordinance is preempted by the Act.

We begin by reviewing the provisions of the Fayette County Zoning Ordinance in order to determine whether the provisions thereof reflect an attempt by Fayette County to enact a comprehensive regulatory scheme relative to the oil and gas devel-

opment within the county as in *Range Resources/Salem Township* or the provisions thereof are merely traditional zoning regulations that identify which uses are permitted in different areas of the locality, even if such regulations preclude oil and gas drilling in certain zones as in *Huntley.*

The term "oil and gas well" is defined by the Zoning Ordinance as a "[a] pierced or bored hole in the ground used to extract a naturally occurring commodity such as petroleum oil or natural gas." Section 1000–108 of the Zoning Ordinance; R.R. at 43a. Oil and gas wells are a permitted use by right in the A–1 (Agricultural Rural District) and C (Conservation) zoning districts. Section 1000–203 of the Zoning Ordinance, Table 1; R.R. at 60a. Oil and gas wells are permitted as a special exception in the R–A (Low Density Residential District), R–1 (Moderate Density Residential District), R–2 (High Density Residential District), M–1 (Light Industrial), M–2 (Heavy Industrial), and AH (Airport Hazard Overlay Zone) zoning districts. *Id.*

Section 1000–108 of the Zoning Ordinance defines "permitted use" as "[a]n authorized use allowed by right that may be granted by the Office of Planning, Zoning and Community Development upon compliance with the requirements of this Chapter." R.R. at 44a. Section 1000–108 defines "special exception" as "[a]n authorized use of a lot, building, or structure that may be granted only by the Zoning Hearing Board after a public hearing and in accordance with express standards and criteria specified in this Chapter." *Id.* at 51a. In addition to the criteria applicable to all special exceptions,[8] the Zoning Ordinance provides that an oil or gas well shall be a permitted special exception subject to the following conditions and/or standards:

A. An oil or gas well shall not be located within the flight path of a runway facility of an airport.

B. An oil or gas well shall not be located closer than two-hundred (200) feet from residential dwelling or fifty-(50) feet from any property line or right-of-way.

C. An oil or gas well shall provide fencing and shrubbery around perimeter of the pump head and support frame.

D. The Zoning Hearing Board may attach additional conditions pursuant to this section, in order to protect the public's health, safety, and welfare. These conditions may include but are not limited to increased setbacks.

Section 1000–851 of the Zoning Ordinance; R.R. at 170a.

These are the extent of the Zoning Ordinance provisions that deal specifically with the regulation of oil and gas wells in Fayette County. In accordance with our Supreme Court's decision in *Huntley,* these provisions do not pertain to technical aspects of well functioning and matters ancillary thereto (such as registration, bonding, and well site restoration). To the contrary, the foregoing zoning provisions pertain to an oil and gas well's location within Fayette County, preserving the character of residential neighborhoods, and encouraging beneficial and compatible land uses.

Moreover, the fact that the zoning hearing board may attach additional conditions to a grant of a special exception in order to protect the public's health, safety, and welfare or the Zoning Ordinance does not specifically guarantee issuance of a permit, does not result in the conclusion that the Zoning Ordinance provides arbitrary authority to deny permission to drill. While the Zoning Ordinance at issue herein grants the zoning hearing board the dis-

---

8. *See* Section 1000–801 of the Zoning Ordinance; R.R. at 122a–23a.

cretion to attach additional conditions in order to protect the public's health, safety, and welfare, such discretion is not unfettered and there is no provision in the Zoning Ordinance, such as in *Range Resources/Salem Township*, which reflects only the minimum terms acceptable or that, upon compliance, a permit "may" be issued by the zoning hearing board subject to final approval by the Fayette County Board of Supervisors at a public meeting. In other words, unlike the ordinance at issue in *Range Resources/Salem Township*, the Fayette County Zoning Ordinance does not provide Fayette County or its zoning hearing board with virtually unbridled discretion to deny permission to drill an oil and gas well even after compliance with the applicable zoning regulations.

Penneco's argues that the regulation of well permits by Section 1000–1004 of the Zoning Ordinance is preempted by the Act. Section 1000–1004 of the Zoning Ordinance, entitled "Zoning certificate", provides as follows:

A. A zoning certificate shall be issued upon a request to certify:

1. Correct zoning classification.

2. Compatibility of existing land uses.

3. Compatibility of proposed land uses.

4. Legal status of a non-conforming use, structure or lot.

B. Requests for a zoning certificate shall be accompanied by a land development plan, as defined by this Chapter [Administration and Enforcement], when, in the opinion of the Zoning Officer, such information is required to ac-

curately certify the requested documentation.

R.R. at 438a. A "zoning certificate" is defined by Section 1000–108 of the Zoning Ordinance as "[a] document signed by the Zoning Officer which is required by this Chapter prior to the commencement of a use or the erection, construction, reconstruction, alteration, conversion or installation of a structure or building." R.R. at 55a.

Penneco contends that Section 1000–1004 regulates well permits by requiring oil and gas operators to apply for and obtain zoning certificates for wells. Penneco argues that this is a *de facto* regulation of well permits in violation of the preemption of well permit regulation by the Act.[9] Penneco contends that the Zoning Ordinance also requires excessive additional costs for zoning certificates.[10] Penneco argues that while the trial court determined that Section 1000–1004 is not directed exclusively at the oil and gas industry, the specific intent to regulate oil and gas operation is not ultimately controlling. Penneco argues that if the effect of the Zoning Ordinance is to regulate oil and gas operations which are already regulated by the Act, then the Zoning Ordinance is preempted, regardless of the regulatory intent.

We disagree. Penneco's characterization of a zoning certificate as a well permit is misleading as Section 1000–1004 is clearly general in scope and directed at all development within Fayette County. The provisions of the Act do not preclude Fayette County from including a general provision, which is broad in scope, in the Zoning Ordinance as means of alerting the county to all potential land use activity

---

9. *See* Section 201 of the Act, 58 P.S. § 601.201, which sets forth comprehensive provisions governing well permits.

10. We note that Penneco does not cite to where in the record the costs for a zoning certificate are set forth.

thereby ensuring proper compliance with its zoning laws. The effect of Section 1000–104 of the Zoning Ordinance is not to regulate oil and gas wells in the same manner as the Act as Penneco suggests, but is clearly to control the orderly development and use of land in a manner consistent with the Zoning Ordinance's requirements.

We also reject Penneco's contention that there is an obvious overlap of the purposes of the Act and the purposes of the Zoning Ordinance as stated in Section 1000–102 of the Zoning Ordinance.[11] R.R. at 23a. Penneco points out that the Zoning Ordinance states that its purpose is "to encourage … commercial … and industrial uses" which Penneco contends includes commercial and industrial uses of oil and gas resources by implication. Penneco argues that this purpose is made redundant by the Act's purpose "to permit the optimal development of the oil and gas resources of Pennsylvania." Section 102 of the Act, 58 P.S. § 601.102. Penneco points out further that the Zoning Ordinance was enacted "to protect the environment of the County" whereas the Act was enacted "to permit the optimal development of the oil and gas resources of Pennsylvania … consistent with the protection of the … environment … of the Commonwealth"

and "to protect the natural resources, environmental rights and values secured by the Pennsylvania Constitution." *Id.* Thus, Penneco argues, both the Act and the Zoning Ordinance attempt to promote, coordinate and regulate, among other things, the development of oil and gas resources along with the protection of the environment.

As in *Huntley,* we conclude that while there may be some overlap between the goals of Fayette County's Zoning Ordinance and the purposes set forth in the Act, the most salient objectives underlying restrictions on oil and gas drilling in certain zoning districts appears in Fayette County to be those pertaining to preserving the character of residential neighborhoods, as well as each zoning district, and encouraging beneficial and compatible land uses. As such, the limited provisions of the Zoning Ordinance governing oil and gas wells in Fayette County do not accomplish the same purposes as set forth in Section 102 of the Act, 58 P.S. § 601.102. The Supreme Court pointed out in *Huntley* that the traditional purposes of zoning are distinct from the purposes set forth in the Act. *Huntley,* 600 Pa. at 224, 964 A.2d at 865. Herein, the traditional purposes of zoning contained in Fayette County's Zoning Ordinance are distinct from the pur-

11. Section 1000–102 of the Zoning Ordinance provides that the purposes of the ordinance are as follows:

A. This Chapter is adopted for the following purposes:

1. To provides for the proper distribution of development so as to make the most efficient use of existing community facilities, transportation networks and public infrastructure;

2. To encourage residential, commercial, institutional and industrial uses in the most appropriate locations;

3. To strengthen existing villages by encouraging a mixture of residential, commercial and institutional uses within the boundaries of existing public infrastructure;

4. To clearly define the urban and rural sections of the County;

5. To protect the environment of the County by giving special attention to preserving and promoting the County's natural assets such as woodlands, streams, rivers, and steep slopes;

6. To protect and conserve identified prime agricultural areas for agricultural use;

7. To promote rehabilitation of structures and reuse of land that is compatible with and sensitive to the region's heritage and fully integrated with the nature environment; and

8. To promote high quality design throughout the built environment.

poses set forth in Section 102 of the Act regardless of Penneco's contentions to the contrary.

Accordingly, we conclude that the provisions of the Zoning Ordinance do not reflect an attempt by Fayette County to enact a comprehensive regulatory scheme relative to the oil and gas development within the county but instead reflect traditional zoning regulations that identify which uses are permitted in different areas of the locality. The Zoning Ordinance, on its face, is clearly a zoning ordinance of general applicability like the ordinance in *Huntley*. Therefore, the Zoning Ordinance is not preempted by the Act.

The trial court's order is affirmed.

Judge McGINLEY did not participate in the decision in this case.

### ORDER

AND NOW, this 22nd day of July, 2010, the December 9, 2009 order of the Court of Common Pleas of Fayette County, entered in the above-captioned matter is affirmed.