**ROBINSON TOWNSHIP, Washington County, Pennsylvania, Brian Coppola, Individually and in his Official Capacity as Supervisor of Robinson Township, Township of Nockamixon, Bucks County, Pennsylvania, Township of South Fayette, Allegheny County, Pennsylvania, Peters Township, Washington County, Pennsylvania, David M. Ball, Individually and in his Official Capacity as Councilman of Peters Township, Township of Cecil, Washington County, Pennsylvania, Mount Pleasant Township, Washington County, Pennsylvania, Borough of Yardley, Bucks County, Pennsylvania, Delaware Riverkeeper Network, Maya Van Rossum, the Delaware Riverkeeper, Mehernosh Khan, M.D., Petitioners**

**v.**

**COMMONWEALTH of Pennsylvania, Pennsylvania Public Utility Commission, Robert F. Powelson, in his Official Capacity as Chairman of the Public Utility Commission, Office of the Attorney General of Pennsylvania, Linda L. Kelly, in her Official Capacity as Attorney General of the Com-**

monwealth of Pennsylvania, Pennsylvania Department of Environmental Protection and Michael L. Krancer, in his Official Capacity as Secretary of the Department of Environmental Protection, Respondents.

Commonwealth Court of Pennsylvania.

Argued May 14, 2014.

Decided July 17, 2014.

Jonathan M. Kamin, Pittsburgh, John M. Smith, Canonsburg, and Jordan B. Yeager, Doylestown, for petitioners.

David R. Overstreet, Pittsburgh, for amici curiae Penneco Oil Company, Inc., Chesapeake Appalachia, LLC, MarkWest Liberty Midstream & Resources, LLC, The Pennsylvania Independent Oil and Gas Association, The Marcellus Shale Coalition, and American Petroleum Institute.

Jarad W. Handelman, First Executive Deputy General Counsel, Dennis A. Whitaker, Chief Counsel, Harrisburg, for respondents the Pennsylvania Department of Environmental Protection and Secretary E. Christopher Abruzzo.

Matthew H. Haverstick, Philadelphia, for respondents the Pennsylvania Public Utility Commission and Chairman Robert F. Powelson.

Howard G. Hopkirk, Senior Deputy Attorney General, for respondents Commonwealth of Pennsylvania, Office of Attorney General and Linda L. Kelly.

BEFORE: DAN PELLEGRINI, President Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and ROBERT SIMPSON, Judge, and P. KEVIN BROBSON, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY President Judge PELLEGRINI.

This matter is presently before us on remand from a Supreme Court "mandate" directing us to consider the constitutionality of certain provisions of Act 13[1] to address several claims that we did not address because we incorrectly found that the person(s) asserting the right did not have standing or that the claim could not be brought in a petition for review in our original jurisdiction. *See Robinson Township v. Commonwealth,* —— Pa. ——, 83 A.3d 901, 999–1000 (2013) (*Robinson Township II*).[2] While the Supreme Court affirmed our holding that 58 Pa.C.S.

---

1. 58 Pa.C.S. §§ 2301–3504. Act 13 repealed Pennsylvania's Oil and Gas Act, Act of December 19, 1984, P.L. 1140, *as amended,* 58 P.S. §§ 601.101–601.605 (repealed), and replaced it with a codified statutory framework regulating oil and gas operations in Pennsylvania, but also added many new provisions which the Petitioners have challenged as unconstitutional.

2. The full history of this case may be found in *Robinson Township II* and this Court's prior opinion in *Robinson Township v. Commonwealth,* 52 A.3d 463 (Pa.Cmwlth.2012) (*Robinson Township I*).

§§ 3215(b)(4) and 3304 were unconstitutional (on different grounds), remand was necessary because the Court reversed our dismissal of claims brought under Article 1, Section 27 of the Pennsylvania Constitution [3] by finding that 58 Pa.C.S. §§ 3215(d) and 3303 [4] were also unconstitutional under that provision and enjoined their enforcement. As a result, our Supreme Court further directed us to address whether any of the relevant provisions of Act 13 are severable.

3. Article 1, Section 27 states:
> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people. Pa. Const. art. I, § 27.

4. 58 Pa.C.S. § 3303 provides, in relevant part, that "environmental acts are of State-wide concern and, to the extent that they regulate oil and gas operations, occupy the entire field of regulation, to the exclusion of all local ordinances. The Commonwealth ... preempts and supersedes the local regulation of oil and gas operations regulated by the environmental acts, as provided in this chapter." In turn, 58 Pa.C.S. § 3301 defines "environmental acts" as "[a]ll statutes ... relating to the protection of the environment or the protection of public health, safety and welfare, that are administered and enforced by [the Department of Environmental Protection (DEP)] or by another Commonwealth agency ... and all Federal statutes relating to the protection of the environment, to the extent those statutes regulate oil and gas operations."

> In addition, 58 Pa.C.S. § 3302 provides, in pertinent part:
>> Except with respect to local ordinances adopted pursuant to the [Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202,] and the [Flood Plain Management Act, Act of October 4, 1978, P.L. 851, 32 P.S. §§ 679.101–679.601], all local ordinances purporting

To comply with the Supreme Court "mandate," the parties have agreed that only the following issues need to be addressed:

- Whether notice to only public drinking water systems following a spill resulting from drilling operations,[5] but not private water suppliers, is unconstitutional because it is a special law and/or violates equal protection; [6]

>> to regulate oil and gas operations regulated by Chapter 32 (relating to development) are hereby superseded. No local ordinance adopted pursuant to the MPC or the Flood Plain Management Act shall contain provisions which impose conditions, requirements or limitations on the same features of oil and gas operations regulated by Chapter 32 or that accomplish the same purposes as set forth in Chapter 32. The Commonwealth, by this section, preempts and supersedes the regulation of oil and gas operations as provided in this chapter.

5. 58 Pa.C.S. § 3218.1 states that "[u]pon receiving notification of a spill, [DEP] shall, after investigating the incident, notify any public drinking water facility that could be affected by the event that the event occurred. The notification shall contain a brief description of the event and any expected impact on water quality."

6. Article 3, Section 32 of the Pennsylvania Constitution provides, in relevant part:
> The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:
>> 1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts:
>>
>> \* \* \*
>>
>> 7. Regulating labor, trade, mining or manufacturing:
>>
>> \* \* \*
>
> Nor shall the General Assembly indirectly enact any special or local law by the partial

- Whether those provisions of Act 13 prohibiting health professionals from disclosing to others the identity and amount of hydraulic fracturing additives received from the drilling companies impedes their ability to diagnose and treat patients,[7] is unconstitutional because it is a special law and/or violates equal protection and violates the single subject rule;[8]

- Whether conferring the power of eminent domain upon a corporation empowered to transport, sell, or store natural gas[9] in this Commonwealth to take the property of others for its operations is unconstitutional because it permits a taking for private purpose;[10] and

- Whether 58 Pa.C.S. §§ 3302 and 3305 to 3309, which authorizes the Public Utility Commission (PUC) to review local zoning ordinances and to withhold impact fees from local governments, are severable from the enjoined provisions of Act 13.

repeal of a general law; but laws repealing local or special acts may be passed. Pa. Const. art. III, § 32.

7. 58 Pa.C.S. § 3222.1(b)(10) and (11) states: (10) A vendor, service company or operator shall identify the specific identity and amount of any chemicals claimed to be a trade secret or confidential proprietary information to any health professional who requests the information in writing if the health professional executes a confidentiality agreement and provides a written statement of need for the information indicating all of the following:
 (i) The information is needed for the purpose of diagnosis or treatment of an individual.
 (ii) The individual being diagnosed or treated may have been exposed to a hazardous chemical.
 (iii) Knowledge of information will assist in the diagnosis or treatment of an individual.
 (11) If a health professional determines that a medical emergency exists and the specific identity and amount of any chemicals claimed to be a trade secret or confidential proprietary information are necessary for emergency treatment, the vendor, service provider or operator shall immediately disclose the information to the health professional upon a verbal acknowledgment by the health professional that the information may not be used for purposes other than the health needs asserted and that the health professional shall maintain the information as confidential. The vendor, service provider or operator may request, and the health professional shall provide upon request, a written statement of need and a confidentiality agreement from the health professional as soon as circumstances permit. . . .

8. Article 3, Section 3 of the Pennsylvania Constitution states, in pertinent part, "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title. . . ." Pa. Const. art. III, § 3.

9. 58 Pa.C.S. § 3241(a) provides, in relevant part:

 (a) **General rule.**—Except as provided in this subsection, a corporation empowered to transport, sell or store natural gas or manufactured gas in this Commonwealth may appropriate an interest in real property located in a storage reservoir or reservoir protective area for injection, storage and removal from storage of natural gas or manufactured gas in a stratum which is or previously has been commercially productive of natural gas. . . .

10. Article 1, Section 1 states, "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those . . . of acquiring, possessing and protecting property. . . ." Pa. Const. art. I, § 1. In addition, Article 1, Section 10 provides, in relevant part, that "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." Pa. Const. art. I, § 10. Likewise, the Fifth Amendment to the United States Constitution provides, in pertinent part, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

## I.

As noted above, 58 Pa.C.S. § 3218.1 states that "[u]pon receiving notification of a spill, [DEP] shall, after investigating the incident, notify any public drinking water facility that could be affected by the event that the event occurred. The notification shall contain a brief description of the event and any expected impact on water quality." In Count IV of their Petition for Review, Petitioners [11] argue that this is a special law and violates equal protection because it only requires notice to public water supply owners and leaves private well owners and other drinking water sources completely in the dark and unaware of the harm to the water supply in the event of an oil or gas drilling-related spill. They argue that private well owners have a greater need for notification under Act 13 because the majority of gas drilling occurs in rural areas; that there is a greater reliance on private water sources by residents and businesses in such rural areas; and that the dangers posed by drilling are increased because private wells are not subject to the routine testing and monitoring of public water systems. Petitioners claim that there is no justification for treating private wells differently than public water sources for the purposes of notification under Act 13.

 As the Supreme Court explained in *Robinson Township II:*

First adopted in the Pennsylvania Constitution of 1874, Section 32 of Article III was intended to end "the flood of privileged legislation for particular localities and for private purposes which was common in 1873." Over time, Section 32—akin to the equal protection clause of the Fourteenth Amendment—has been recognized as implicating the principle "that like persons in like circumstances should be treated similarly by the sovereign."

This Court does not apply Section 32 to divest the General Assembly of its general authority either to identify classes of persons and the different needs of a class, or to provide for differential treatment of persons with different needs. Our constitutionally mandated concerns are to ensure that the challenged legislation promotes a legitimate state interest, and that a classification is reasonable rather than arbitrary and "rest[s] upon some ground of difference, which justifies the classification and has a fair and substantial relationship to the object of the legislation." A legislative classification must be based on "real distinctions in the subjects classified and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition." In its review, a court may hypothesize regarding the reasons why the General Assembly created the classifications. Alternately, a court may deem a statute or provision *per se* unconstitutional "if, under the classification, the class consists of one member and is closed or substantially closed to future membership."

83 A.3d at 987–88 (citations omitted).

While Act 13 does not define "public drinking water facility," Section 3 of the Pennsylvania Safe Drinking Water Act, Act of May 1, 1984, P.L. 206, 35 P.S. § 721.3, defines "public water system" as "[a] system for the provision to the public of water for human consumption which has at least 15 service connections or regularly serves an average of at least 25 individuals

---

11. By order dated April 7, 2014, this Court granted Robinson Township's unopposed application to withdraw and directed the Chief Clerk to mark this matter closed and discontinued only as to Robinson Township.

daily at least 60 days out of the year...." [12, 13] In addition, Section 1 of the Water Rights Act, Act of June 24, 1939, P.L. 842, 32 P.S. § 631, defines "public water supply agency" as "any corporation or any municipal or quasi-municipal corporation, district, or authority, now existing or hereafter incorporated under the laws of the Commonwealth ... and vested with the power, authority, right, or franchise to supply water to the public in all or part of any municipal or political subdivision of the Commonwealth...." 58 Pa.C.S. § 3218.1 promotes the Commonwealth's legitimate interest in protecting the public water supply by ensuring that any public drinking water facilities that could be af-

fected by a spill or contamination are notified of the event and any expected impact on water quality.[14]

■ While we acknowledge that the majority of gas drilling occurs in rural areas, that there is a greater reliance on private water suppliers in such areas, and that private wells are not subject to the routine testing and monitoring of public water systems, there are valid reasons for limiting notice to public water suppliers and distinguishing between such public water facilities providing potable water and private water suppliers under 58 Pa.C.S. § 3218.1. Private water supplies are not regulated by the DEP [15] and have been omitted and

12. Likewise, the federal Safe Drinking Water Act defines "public water system" as "a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals...." 42 U.S.C. § 300f(4)(A).

13. Public water systems are either community water systems, defined as "[a] public water system which serves at least 15 service connections used by year-round residents or regularly serves at least 25 year-round residents," or noncommunity water systems, defined as "[a] public water system that is not a community water system." 35 P.S. § 721.3. In turn, a nontransient noncommunity water system is defined as "[a] noncommunity water system that regularly serves at least 25 of the same persons over 6 months per year," and transient community water system is defined as "A public water system which is not a community, nontransient noncommunity, bottled or vended water system, nor a retail water facility or a bulk water hauling system." 25 Pa.Code § 109.1. Finally, a public water system includes "[a]ny collection, treatment, storage and distribution facilities under control of the operator of such system;" "[a]ny collection or pretreatment storage facilities not under such control which are used in connection with such system;" and "[a] system which provides water for bottling or bulk hauling for human consumption." 35 P.S. § 721.3.

14. In enacting the Safe Drinking Water Act, the General Assembly declared in Section 2 that: "(1) [a]n adequate supply of safe, pure drinking water is essential to the public health, safety and welfare and that such a supply is an important natural resource in the economic development of the Commonwealth[;] (2) [t]he Federal Safe Drinking Water Act provides a comprehensive framework for regulating the collection, treatment, storage and distribution of potable water[; and] (3) [i]t is in the public interest for the Commonwealth to assume primary enforcement responsibility under the Federal Safe Drinking Water Act." 35 P.S. § 721.2(a). The General Assembly also declared that "[i]t is the purpose of this act to further the intent of section 27 of Article I of the Constitution of Pennsylvania by: (1) [e]stablishing a State program to assure the provision of safe drinking water to the public by establishing drinking water standards and developing a State program to implement and enforce the standards[;] (2) [d]eveloping a process for implementing plans for the provision of safe drinking water in emergencies[;] (3) [p]roviding public notice of potentially hazardous conditions that may exist in a water supply." 35 P.S. § 721.2(b).

15. Section 4(a) of the Water Well Drillers License Act, Act of May 29, 1956, P.L. 1955, 32 P.S. § 645.4(a), requires a Department of Conservation and Natural Resources (DCNR) license to drill water wells and Section 10(a), 32 P.S. § 645.10(a), requires every licensed

are specifically exempt from many statutes such as the Safe Drinking Water Act, the Water Rights Act, and the relevant DEP regulations.[16]

Given that the DEP doesn't regulate private water sources and that they have historically been omitted from statutes regulating the public potable water supply

and notice regarding potentially hazardous conditions that may exist in the public water supply, the General Assembly's distinction between private water supplies and public drinking water facilities in 58 Pa.C.S. § 3218.1 is a reasonable classification related to the legitimate state interest promoted by that section.[17] As noted by

water well driller to keep a record of each well that is drilled upon a DCNR form "setting forth the exact geographic location and log of the well containing a description of the materials penetrated, the size and depth, the diameters and lengths of casting and screen installed, the static and pumping levels, and the yield and such other information pertaining to the construction or operation of the well or wells as [DCNR] may require...." However, under 32 P.S. § 645.4(b), the licensing requirements do not apply to "[a]ny farmer performing any function on any land owned or leased by him for farming purposes," or "[a]ny natural person drilling a well on land owned by him or of which he is a lessee and used by him as his residence."

**16.** See, e.g., 25 Pa.Code §§ 109.1–109.1307.

**17.** The provisions of 58 Pa.C.S. § 3218.1 only apply to the DEP's duty to notify public drinking water facilities upon notification of a spill. In order to protect fresh groundwater, 58 Pa.C.S. § 3217(a) requires well operators to control and dispose of brines produced from the drilling, alteration or operation of a well consistent with the Clean Streams Law, Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. §§ 691.1–691.1001; 58 Pa.C.S. § 3217(b)-(d) provides that casings must comply with the DEP regulations to prevent the migration of gas or fluids or the pollution or diminution of fresh groundwater. 58 Pa.C.S. § 3218.2 requires that "[u]nconventional well sites shall be designed and constructed to prevent spills to the ground surface or spills off the well site;" outlines the containment practices and materials and capacity that can be stored, and requires a plan to be submitted to the DEP describing the equipment and practices to be used.

In addition, the DEP's regulations at 25 Pa.Code § 78.66(b) states that "[i]f a reportable release of brine on or into the ground occurs at the well site, the owner or operator shall notify the appropriate regional office of

[DEP] as soon as practicable, but no later than 2 hours after detecting or discovering the release." 25 Pa.Code § 78.66(c) provides that the notification shall be by telephone and identify the responsible company and the time, place and cause of the release; any available information regarding the contamination of surface water, groundwater or soil; and the remedial actions planned, initiated or completed. Likewise, 25 Pa.Code § 91.33(a) states, in pertinent part, "[i]f, because of an accident or other activity or incident, a toxic substance or another substance which would endanger downstream users of the waters of this Commonwealth, would otherwise result in pollution or create a danger of pollution of the waters, ... it is the responsibility of the person at the time in charge of the substance or owning or in possession of the premises [or] facility ... from or on which the substance is discharged or placed to immediately notify [DEP] by telephone of the location and nature of the danger and, if reasonably possible to do so, to notify known downstream users of the waters."

Moreover, 58 Pa.C.S. § 3218(a) provides that "a well operator who affects a public or private water supply by pollution or diminution shall restore or replace the affected supply with an alternate source of water adequate in quantity or quality for the purposes served by the supply...." That section also provides that the DEP "shall ensure that the quality of a restored or replaced water supply meets the standards established under ... the Pennsylvania Safe Drinking Water Act...." 58 Pa.C.S. § 3218(b) states that "[a] landowner or water purveyor suffering pollution or diminution of a water supply as a result of the drilling, alteration or operation of an oil or gas well may so notify [DEP] and request that an investigation be conducted ...;" 58 Pa. C.S. § 3218(b.2) requires the DEP to establish a single statewide toll-free number to report cases of water contamination associated with oil and gas drilling; and 58 Pa.C.S.

the Commonwealth, while private water supplies can be easily substituted, such as that provided to both public and private water sources in 58 Pa.C.S. § 3218(a), public water supplies cannot be quickly remedied or replaced due to the expansive nature of the system. Given the breadth of the trigger for the DEP's notice obligation under 58 Pa.C.S. § 3218.1, covering any spill at any location near or far from a well, and DEP's lack of information on private well location or ownership, it is not feasible to require DEP to identify private wells that may be potentially affected by a spill and it is impossible for DEP to provide notice to these unknown private well owners. These are valid distinctions supporting disparate treatment under 58 Pa. C.S. § 3218.1 and Petitioners' claim to the contrary is without merit. Failing to recognize this distinction may also have the unintended consequence of applying many standards applicable to public water suppliers to well owners.

Accordingly, even though we dismiss Count IV of the petition for review, that does not mean that in the event of a spill that either the DEP or the drilling company should not or will not use its best efforts to notify the affected community, even though it is not required to do so. Just as there is no affirmative requirement to notify individuals of an oncoming flood or fire, public entities as of course notify those in the path of danger. Even though it is not required to do so, in the event of a spill, the DEP will, in all likelihood, canvas the areas to identify individuals served by private wells and notify them of the spill and aid them in getting alternative water

supplies to protect the public which it is charged to protect. Likewise, drilling companies should make similar undertakings as good corporate citizens, not to mention that it is their actions that necessitate the warning.

## II.

In Count V of the petition for review, Petitioners allege that 58 Pa.C.S. § 3241(a) violates Article 1, Section 10 of the Pennsylvania Constitution and the Fifth Amendment to the United States Constitution because it permits a corporation to appropriate an interest in property in a storage reservoir or reservoir protective area by eminent domain for the nonpublic purpose of injecting, storing and removing natural gas.[18] Petitioners argue that Section 204(a) of the Eminent Domain Code also prohibits "the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise...." 26 Pa. C.S. § 204(a).

However, 58 Pa.C.S. § 3241(a) only vests this eminent domain power in "a corporation empowered to transport, sell or store natural gas in this Commonwealth...." Section 102 of the Public Utility Code defines a "public utility" as "[a]ny person or corporations now or hereafter owning or operating ... equipment or facilities for ... [p]roducing, generating, transmitting, distributing or furnishing natural or artificial gas ... for the production of light, heat, or power to or for the public for compensation," or "[t]ransporting or conveying natural or artificial gas ... by pipeline or conduit, for the public

---

§ 3218(b.4) requires the DEP to publish on its website lists of confirmed cases of water supply contamination resulting from hydraulic fracturing.

**18.** "The Legislature is presumed not to intentionally pass unconstitutional laws, and

courts give statutes a constitutional interpretation if that is reasonably possible." *Bricklayers of Western Pennsylvania Combined Funds, Inc. v. Scott's Development Co.,* —— Pa. ——, 90 A.3d 682, 692 (2014).

for compensation." 66 Pa.C.S. § 102. Section 1103 of the Business Corporation Law of 1988 (Corporation Law) also defines "public utility corporation" as "[a]ny domestic or foreign corporation for profit that ... is subject to regulation as a public utility by the [PUC]...." 15 Pa.C.S. § 1103.[19]

In addition, Section 1511 of the Corporation Law states, in pertinent part:

(a) **General rule.**—A public utility corporation shall, in addition to any other power of eminent domain conferred by any other statute, have the right to take, occupy and condemn property for one or more of the following principal purposes and ancillary purposes reasonably necessary or appropriate for the accomplishment of the principal purposes:

\* \* \*

(2) The transportation of artificial or natural gas ... for the public.

(3) The production, generation, manufacture, transmission, storage, distribution or furnishing of natural or artificial gas ... to or for the public.

15 Pa.C.S. § 1511(a)(2), (3). As a result, like 58 Pa.C.S. § 3241(a), 15 Pa.C.S. § 1511(a)(2) and (3) also confers upon a public utility the power of eminent domain to acquire property for the transportation, storage, transmission, distribution or furnishing of natural gas to or for the public.

Contrary to Petitioners' assertion, 58 Pa.C.S. § 3241(a) only confers upon a public utility possessing a certificate of public convenience the power to condemn property for the injection, storage and removal of natural gas for later public use. In fact, the prohibition in 26 Pa.C.S. § 204(a) does not apply if "[t]he property is taken by, to the extent the party has the power of eminent domain, ... a public utility." 26 Pa.C.S. § 204(b)(2)(i). Accordingly, we dismiss Count V of the petition for review.

## III.

### A.

■ Petitioners allege that 58 Pa.C.S. § 3222.1(b)(10) and (11) is a special law that violates Article 3, Section 32 of the Pennsylvania Constitution because it restricts Mehernosh Khan, M.D.'s (Dr. Khan) ability to disclose critical diagnostic information when dealing with the gas industry's confidential and proprietary information. They contend that those provisions grant the oil and gas industry special treatment concerning a physician's access to proprietary or trade secret information regarding hydro fracturing chemicals and that those provisions serve "no legitimate state interest,"[20] and Petitioners point out

---

19. The PUC's regulations also define a "public utility," in pertinent part, as "[p]ersons or corporations owning or operating ... equipment or facilities for producing, generating, transmitting, distributing, or furnishing gas for the production of light, heat, or power to or for the public for compensation. The term does not include a producer or manufacturer of gas not engaged in distributing the gas directly to the public for compensation." 52 Pa.Code § 59.1. Pursuant to Section 1102(a)(1)(i) of the Public Utility Code, a public utility is required to obtain a certificate of public convenience from the PUC "[f]or any public utility to begin to offer, render, furnish or supply within this Commonwealth service

of a different nature or to a different territory than that authorized by ... a certificate of public convenience...." 66 Pa.C.S. § 1102(a)(1)(i).

20. Petitioners contend that there is no valid state interest in not disclosing this information because for a physician to completely and properly treat a patient, the doctor must consider all of the patient's symptoms, as well as his/her occupational, social, medical and environmental history to perform what is known as a differential diagnosis. A differential diagnosis is a process by which a doctor rules out specific illness or disease process based upon a full disclosure of all of a pa-

that, generally, other industries must disclose chemicals.[21] Without sharing that information, Petitioners contend that Dr. Khan cannot make an informed diagnosis of a patient.

However, the foregoing provisions create a uniform set of state-wide rules that are equally applicable to members of the oil and gas industry and to all physicians concerning the industry's obligation to disclose chemical information to physicians for the purposes of medical treatment.[22] They do not single out a particular member of either group for special treatment, and they reflect the balance struck by the General Assembly between the need to disclose confidential and proprietary information for medical treatment, the public's interest in protecting these trade secrets, and the industry's interest in protecting its proprietary information.

The Act 13 disclosure requirements do require that operators give to the DEP "completion reports" which are filed with the DEP within 30 days after a well is properly equipped for production of oil and gas. *See* 58 Pa.C.S. §§ 3222(b), (b.1), and 3203 (containing, among other things, a descriptive list of chemical additives intentionally added to fracturing fluid, and their maximum concentration as a percent of mass to the total volume of base fluid, which is typically water but can be unavailable due to trade secret protection for portions of the information provided to DEP. The operators, service companies, or vendors[23] must disclose chemical additives used to fracture unconventional wells to

---

tient's symptoms, prior medical history, as well as occupational and environmental exposures. Once a differential diagnosis is made, a doctor, in order to give competent medical care, must perform what is known as a differential etiology. In this process, a doctor is required to "rule in" and then "rule out" all possible causes of the patient's disease or illness which also requires complete information regarding all of the patient's past medical, social, occupational and environmental exposure history to properly determine the source or cause of the patient's illness or disease. To make a diagnosis, the physician has to share this information with other physicians which Petitioners contend is precluded by the foregoing provisions.

**21.** Petitioners specifically cite to the Hazard Communication Standard Regulations promulgated by the Occupational Safety and Health Administration (OSHA) which require an employer to provide copies of, or access to, every Material Safety Data Sheet (MSDS) that lists not only the toxicity of each chemical constituent that makes up the product, but also all of the known adverse health effects, of each chemical component. *See* Petitioners' Petition for Review at ¶¶ 251–254.

**22.** As explained above, "this Court does not apply Section 32 [of the Pennsylvania Constitution] to divest the General Assembly of its

general authority either to identify classes of persons and the different needs of a class, or to provide for differential treatment of persons with different needs. Our constitutionally mandated concerns are to ensure that the challenged legislation promotes a legitimate state interest, and that a classification is reasonable rather than arbitrary and 'rest[s] upon some ground of difference, which justifies the classification and has a fair and substantial relationship to the object of the legislation.'" *Robinson Township II*, 83 A.3d at 987 (citations omitted). In addition, in our review, this Court "may hypothesize regarding the reasons why the General Assembly created the classifications." *Id.* (citations omitted).

**23.** Petitioners' assertion that the complete chemical composition of hydraulic fracturing products is unknown because Act 13 does not include the products' manufacturers within its scope merely exposes a gap in the law and does not support their claim that 58 Pa.C.S. § 3222.1(b)(10) and (11) is a special law that violates Article 3, Section 32 of the Pennsylvania Constitution. Dr. Khan is not precluded from disclosing confidential or proprietary information under 58 Pa.C.S. § 3222.1(b)(10) and (11) if that information has not been disclosed to him because it is either not known or disclosed by those within the scope of that section's disclosure requirements.

the public within 60 days of completion of the well via a public searchable database). *See* 58 Pa.C.S. § 3222.1(d); *http://fracfocus.org/*. Where a trade secret is claimed, operators must nevertheless disclose the chemical family or similar description of the chemical. *See* 58 Pa.C.S. §§ 3222(b)(3) and (4). That the provisions create a set of disclosure rules different from the norm for other industrial chemical users under OSHA does not mean that Act 13 constitutes a special law.[24]

■ Moreover, while 58 Pa.C.S. § 3222.1(b)(10) and (11) refer to a written or oral "confidentiality agreement," there is no indication in the statute that such agreement precludes a physician from sharing the disclosed confidential and proprietary information with another physician for purposes of diagnosis or treatment or from including such information in a patient's medical records. 58 Pa.C.S. § 3222.1(b)(11) merely provides "that the information may not be used for purposes other than the health needs asserted and that the health professional shall maintain the information as confidential." Nothing precludes a physician from including the information in patient records, medical treatment or evaluations, including evaluations based on trade secrets that physicians are required to keep. *See* 49 Pa. Code § 16.95. Moreover, nothing in Act 13 precludes a physician from sharing with other medical providers any trade secrets that are necessary for the diagnosis or treatment of an individual. Information regarding a patient's treatment and his or her medical records are generally confidential and information obtained thereby or contained therein is generally not subject to release without the patient's consent.[25]

---

24. For a summary of disclosure laws regarding fracking, *see* Matthew McFeeley, *Falling through the Cracks: Public Information and the Patchwork of Hydraulic Fracturing Disclosure Laws*, 38 Vt. L.Rev. 849 (2014).

25. *See, e.g.,* 28 Pa.Code § 5.53 ("Records and reports of examinations of specimens shall be confidential."); 28 Pa.Code § 27.5a ("Case reports submitted to the Department [of Health] or to a [Local Morbidity Reporting Office (LMRO) relating to reportable diseases, infections and conditions] are confidential. Neither the reports, nor any information contained in them which identifies or is perceived by the Department of Health or the LMRO as capable of being used to identify a person named in a report, will be disclosed to any person who is not an authorized employe or agent of the Department or the LMRO, and who has a legitimate purpose to access case information...."); 28 Pa.Code § 27.31(d) ("Reports [of cancer] submitted under this section are confidential and may not be open to public inspection or dissemination. Information for specific research purposes may be released in accordance with procedures established by the Department [of Health] with the advice of the Pennsylvania Cancer Control, Prevention and Research Advisory Board."); 28 Pa.Code § 103.22(b)(3) ("A [hospital] patient has the right to every consideration of his privacy concerning his own medical care program. Case discussion, consultation, examination, and treatment are considered confidential and should be conducted discreetly."); 28 Pa.Code § 103.22(b)(4) ("A [hospital] patient has the right to have all records pertaining to his medical care treated as confidential except as otherwise provided by law or third-party contractual arrangements."); 28 Pa.Code § 115.27 ("All records shall be treated as confidential. Only authorized personnel shall have access to the records. The written authorization of the patient shall be presented and then maintained in the original record as authority for release of medical information outside the hospital."); 28 Pa.Code § 563.9 ("Records shall be treated as confidential. Only authorized personnel shall have access to the records. The written authorization of the patient shall be presented and then maintained in the original record as authority for release of medical information outside the [ambulatory surgical facility]."); 28 Pa.Code § 601.36(d) ("Information contained in the patient's record shall be privileged and confidential. Clinical record information shall be safeguarded against loss or unauthorized use.

## B.

In Count XII of the petition for review, Petitioners allege that 58 Pa.C.S. § 3222.1(b)(11) violates the single subject requirement of Article 3, Section 3 of the Pennsylvania Constitution. Petitioners contend that because health professionals are regulated under Title 35 of the Pennsylvania Consolidated Statutes, and because 58 Pa.C.S. § 3222.1(b)(11) provides statutory restrictions on health professionals that are not within the oil and gas industry regulated by Title 58, the foregoing provision violates the single-subject requirement of Article 3, Section 3.

 Article 3, Section 3 requires that a bill may only contain one subject, which must be clearly expressed in its title. As the Supreme Court has explained:

In practice, Section 3's dual requirements—clear expression and single subject—are interrelated, as they both act to proscribe inserting measures into bills without providing fair notice to the public and to legislators of the existence of the same. On the other hand, bills are frequently amended as they pass through the Legislature, and not all additions of new material are improper. Rather, the strictures of Article III, Section 3 are often satisfied where the provisions added during the legislative process assist in carrying out a bill's main objective or are otherwise "germane" to the bill's subject as reflected in its title.

*City of Philadelphia v. Commonwealth* [575 Pa. 542], 838 A.2d 566, 586–87 (Pa. 2003) (citations omitted). "We believe that exercising deference by hypothesizing reasonably broad topics ... is appropriate to some degree, because it helps ensure that Article III does not become a license for the judiciary to 'exercise a pedantic tyranny' over the efforts of the Legislature." *Id.* at 588 (citation omitted).

 Contrary to Petitioners' assertion, all of the provisions of 58 Pa.C.S. § 3222.1 relate to the trade secrets and confidential proprietary information regarding the chemicals used in the hydraulic fracturing of unconventional wells and under what limited circumstances this information must be reported and released. 58 Pa.C.S. § 3222.1(b)(11) requires oil and gas companies to disclose this confidential information when a health professional requests the information because it is necessary to provide emergency medical treatment to a patient and the professional agrees to only use the information for treatment purposes and to keep it otherwise confidential. 58 Pa.C.S. § 3222.1(b)(11) is merely one small part of the larger scheme of 58 Pa.C.S. § 3222.1, under which this information related to the oil and gas industry must be

---

Written procedures shall govern use and removal of records and conditions for release of information. The patient's written consent shall be required for release of information outside the home health care agency, except as otherwise provided by law or third-party contractual arrangements."); 31 Pa.Code § 146b.11(a) ("A [licensed insurer] may not disclose nonpublic personal health information about a consumer unless an authorization is obtained from the consumer whose nonpublic personal health information is sought to be disclosed."); 49 Pa.Code § 25.213 ("Medical records shall be kept confidential, unless disclosure is required for *bona fide* treatment, with the patient's written consent...."); *T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1059 (Pa.Super.2008) ("[The Health Insurance Portability and Accountability Act of 1996 (HIPAA)] provides for monetary fines and various terms of imprisonment for the wrongful disclosure of individually identifiable health information. 42 U.S.C. § 1320d–6. Additionally, the statute required the Secretary of Health and Human Services to promulgate privacy regulations, which are now codified at 45 C.F.R. §§ 164.500–164.534....").

disclosed to a variety of other entities by those participating in the hydraulic fracturing of unconventional wells. The disclosure provisions of 58 Pa.C.S. § 3222.1(b)(11) are germane to the main objective of Act 13, *i.e.,* regulation of the oil and gas industry, and Petitioners' allegation in this regard is patently without merit. *See, e.g., Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth,* 583 Pa. 275, 877 A.2d 383, 396 (2005) ("In contrast to *City of Philadelphia,* in the matter *sub judice,* there is a single unifying subject—the regulation of gaming." The single topic of gaming does not encompass the limitless number of subjects which could be encompassed under the heading of "municipalities" [as in *City of Philadelphia*]. Specifically, "HB 2330 sets forth the legislative intent of regulating gaming, creates the Gaming Control Board, establishes policies and procedures for gaming licenses for the installation and operation of slot machines, enacts provisions to assist Pennsylvania's horse racing industry through other gaming, and provides for administration and enforcement of the gaming law, including measures to insure the integrity of the operation of slot machines."). Accordingly, we again dismiss Counts XI and XII of the petition for review.

## IV.

Finally, because our Supreme Court found that 58 Pa.C.S. §§ 3215(b)(4) and (d), 3303 and 3304 are unconstitutional, the matter was remanded to us to determine what other parts of Act 13 are properly enjoined "upon application of severability principles." *Robinson Township II,* 83 A.3d at 999. The parties have agreed that the only provisions that may be declared unenforceable under the Supreme Court's decision are 58 Pa.C.S. §§ 3302, and 3305 to 3309, all of which give the PUC and this Court jurisdiction to review the provisions of local ordinances to determine whether they comply with Act 13 and, if not, to withhold impact fees imposed for the benefit to alleviate the "impacts" caused by the gas drillers and operators or to impose attorney fees and costs.

▬▬▬ Generally, the doctrine of severability requires that upon finding an application or textual component of a statute to be unconstitutional, a court may, in appropriate circumstances, excise the unconstitutional part rather than declare the entire statute invalid. Section 1925 of the Statutory Construction Act provides the standard which a court is to use when determining whether provisions of a statute are severable, stating in relevant part:

> The provisions of every statute shall be severable. If any provision of any statute ... is held invalid, the remainder of the statute ... shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision ... that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925. As this Court has explained, "[i]n general, a statute ... may be partially valid and partially invalid, and if the provisions are distinct and not so interwoven as to be inseparable, the courts should sustain the valid portions. In determining the severability of a statute ... the legislative intent is of primary significance. The legislating body must have intended that the act ... be separable, and the statute ... must be capable of separation in fact. Thus, the valid portion of the

enactment must be independent and complete within itself." *Pennsylvania Independent Waste Haulers Association v. Township of Lower Merion,* 872 A.2d 224, 228 n. 16 (Pa.Cmwlth.2005) (citing *Saulsbury v. Bethlehem Steel Company,* 413 Pa. 316, 196 A.2d 664, 667 (1964)).

In this case, there are two severability analyses to perform: one is regarding the continued viability of 58 Pa.C.S. § 3302, which is a substantive provision dealing with preemption of the MPC and Flood Plain Management Act; and the second is the continued viability of 58 Pa.C.S. §§ 3305 through 3309, which vests in the PUC and this Court jurisdiction over the determination of whether local ordinances violate Act 13 and the power to impose sanctions.

### A.

58 Pa.C.S. § 3302 provides in pertinent part, that "[n]o local ordinance adopted pursuant to the MPC or the Flood Plain Management Act shall contain provisions which impose conditions, requirements or limitations on the same features of oil and gas operations regulated by Chapter 32 or that accomplish the same purposes as set forth in Chapter 32. The Commonwealth, by this section, preempts and supersedes the regulation of oil and gas operations *as provided in this chapter.*" (Emphasis added).

Our Supreme Court struck as unconstitutional the only operative provisions in Chapter 33 relating to the regulation of oil and gas operations, in particular, 58 Pa.C.S. §§ 3303 and 3304, because those provisions "are incompatible with the Commonwealth's duty as trustee of Pennsylvania's public natural resources [under Article 1, Section 27 of the Pennsylvania Constitution]." *Robinson Township II,* 83

A.3d at 985. Although a more accurate description is that the final sentence of 58 Pa.C.S. § 3302 is necessarily declared unconstitutional, once our Supreme Court declared the only substantive provisions of "this chapter" to be unconstitutional, *i.e.,* 58 Pa.C.S. §§ 3303 and 3304, the Court's declaration also means that this language is necessarily incapable of execution and is severed from the remaining valid provisions of 58 Pa.C.S. § 3302 regarding Chapter 32's regulation of oil and gas operations.

### B.

Regarding the severability of 58 Pa.C.S. §§ 3305 through 3309, we must determine whether those provisions are so dependent on and interdependent with the unconstitutional provisions that it cannot be presumed that the General Assembly would give the PUC jurisdiction to review the validity of local ordinances. In order to make that determination, it is necessary to look at the changes implemented by Chapter 33 from the relevant provisions of the Oil and Gas Act of 1984.

Section 602 of the former Oil and Gas Act, which was replaced by Act 13, prohibited municipalities from regulating "how" oil and gas operations "operate" because that was to be only regulated by the state, but allowed municipalities to use their zoning powers to regulate "where" oil and gas development activities could take place which is necessary to a rational zoning plan and ordinance. *Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont,* 600 Pa. 207, 964 A.2d 855 (2009). Also, generally applicable local ordinances, like those implementing the Storm Water Management Act,[26] were not prohibited and could be applied to oil and gas operations to prevent harm to adjoining proper-

---

**26.** Act of October 4, 1978, P.L. 864, *as* *amended,* 32 P.S. §§ 680.1–680.17.

ty owners and the public at large. *Range Resources–Appalachia, LLC v. Salem Township*, 600 Pa. 231, 964 A.2d 869 (2009).[27]

Apparently acceding to the oil and gas industry's claims that local ordinances tailored to local conditions were purportedly impeding their oil and gas development and that a uniform law was necessary, the General Assembly enacted Act 13 which contained a number of provisions requiring local governments to enact uniform zoning provisions and preempted them from enacting any other laws that dealt directly with oil and gas operations. For example, generally applicable local ordinances such as those dealing with storm water runoff were prohibited. To make those uniform provisions uniformly enforced, the General Assembly allows a municipality or the oil and gas industry to go directly to the PUC rather than the common pleas courts to determine whether a municipality's ordinance violated the new regulatory scheme set forth in Act 13.

58 Pa.C.S. §§ 3305(a)(1) provides that "[a] municipality may, prior to the enactment of a local ordinance [28] ... request the [PUC] to review a proposed local ordinance to issue an opinion on whether it violates the MPC, this chapter or Chapter 32 (relating to development)." Correspondingly, 58 Pa.C.S. § 3305(b)(1) provides that an owner or operator of an oil or gas operation or a municipal resident "who is aggrieved by the enactment or enforcement of a local ordinance may request the [PUC] to review the local ordinance of that local government to determine whether it violates the MPC, this chapter, or Chapter 32," and the PUC's order may be appealed for *de novo* review by this Court under subsection (b)(4). Likewise, 58 Pa.C.S. § 3306 provides that any person aggrieved "by the enactment or enforcement of a local ordinance that violates the MPC, this chapter or Chapter 32 (relating to development)" may bring an action in this Court "to invalidate the ordinance or enjoin its enforcement" whether or not initial review by the PUC was sought.

■ As to whether the procedural provisions giving the PUC jurisdiction over challenges to local ordinances and impact fees, our Supreme Court has already determined that 58 Pa.C.S. §§ 3305 through 3309 are not severable to the extent that they implement or enforce the invalid Sections of Act 13, namely, 58 Pa.C.S. §§ 3303 and 3304. *See Robinson Township II*, 83 A.3d at 994, 998, 1000. Because we have held that 58 Pa.C.S. § 3302 is not enforceable to the extent that it implements 58 Pa.C.S. §§ 3303 and 3304, and our Supreme Court has found that those provisions are not severable to the extent they implement 58 Pa.C.S. §§ 3303 and 3304, the question is whether the PUC's jurisdiction is so hollowed out that its remaining jurisdiction to consider whether a local

**27.** The provisions of 58 Pa.C.S. § 3302 mirror those in the former Section 602 of the Oil and Gas Act, 58 P.S. § 601.602, with one notable exception. The former Section 602 provided that "the Commonwealth, by this enactment, hereby preempts and supersedes the regulation of oil and gas wells *as herein defined.*" (Emphasis added). 58 P.S. § 601.602 (repealed). As noted above, 58 Pa.C.S. § 3302 provides that "the Commonwealth, by this section, preempts and supersedes the regulation of oil and gas operations *as provided in this chapter.*" (Emphasis added). Accord-

ingly, the Commonwealth's reliance on *Range Resources–Appalachia, LLC* and *Huntley & Huntley, Inc.*, interpreting the former valid provisions of Section 602 of the Oil and Gas Act, is misplaced.

**28.** 58 Pa.C.S. § 3301 defines "local ordinance" as "[a]n ordinance or other enactment, including a provision of a home rule charter, adopted by a local government that regulates oil and gas operations."

ordinance violates Chapter 32 is non-severable.

In enacting Act 13, the General Assembly implemented a statutory scheme that was intended to have uniform regulations with uniform methods of determining whether a local ordinance violates any of the provisions of the Act with uniform consequences if a municipality failed to comply. The effect of our Supreme Court's mandate declaring all the substantive provisions contained in Chapter 33 to be unconstitutional and unenforceable, and our holding that the portions of 58 Pa.C.S. § 3302 purporting to enforce Chapter 33 is likewise unenforceable, is that the statutory scheme cannot be implemented. Local zoning matters will now be determined by the procedures set forth under the MPC and challenges to local ordinances that carry out a municipality's constitutional environmental obligations. Because challenges to those ordinances must be brought in common pleas court, it would further frustrate the purpose of the Act in having a uniform procedure. Accordingly, 58 Pa.C.S. §§ 3305 and 3306 are not severable.

Moreover, weighing against finding those provisions severable is that 58 Pa. C.S. § 3307 (relating to the award of attorney fees and costs in actions brought under 58 Pa.C.S. § 3306), 58 Pa.C.S. § 3308 (relating to the withholding of impact fees for municipalities enacting or enforcing local ordinances that violate the MPC or Chapters 32 or 33), and 58 Pa.C.S.

§ 3309(a) (relating to the applicability of Chapter 33) are also not severable. The General Assembly intended to apply sanctions for violations of Chapter 33 as well as Chapter 32. Again, that overall uniform scheme is no longer capable of execution as intended by the General Assembly. For that reason and because they are dependent upon 58 Pa.C.S. §§ 3305 and 3306, they are likewise not severable. *See Robinson Township II*, 83 A.3d at 999 ("Moreover, insofar as Section 3215(c) and (e) are part of the Section 3215(b) decisional process, these provisions as well are incomplete and incapable of execution in accordance with legislative intent. Application of Section 3215(c) and (e) is, therefore, also enjoined.").[29]

Based on the foregoing, we dismiss Counts IV, V, XI and XII of the petition for review and enjoin the application and enforcement of 58 Pa.C.S. § 3302 as it relates to Chapter 33 of Act 13, and 58 Pa.C.S. §§ 3305, 3306, 3307, 3308 and 3309(a) in their entirety.

Judge LEAVITT did not participate in the decision of this case.

### ORDER

AND NOW, this *17th* day of *July*, 2014, Counts IV, V, XI and XII of Petitioners' petition for review are dismissed, and the application and enforcement of 58 Pa.C.S. § 3302 as it relates to Chapter 33 of Act 13, and 58 Pa.C.S. §§ 3305, 3306, 3307,

---

**29.** *See also Robinson Township II*, 83 A.3d at 1008 (Concurring Opinion by Baer, J.) ("The thrust of [Petitioners]' substantive due process arguments centered upon Sections 3303 and 3304 of Act 13, which, respectively, set forth: the prohibition of local governments to impose environmental regulations upon oil and gas production; and the zoning-type provisions that every municipality in the Commonwealth must uniformly adhere to or the development of oil and gas resources. Like the [majority], albeit under my substantive due process analysis, I explicitly find that these provisions are unconstitutional. To that end, and for the reasoning given in part V of the lead opinion, I would further enjoin the entirety of Sections 3305 through 3309 as 'incapable of execution' upon the striking of Sections 3303 and 3304.'").

3308 and 3309(a) in their entirety are hereby enjoined.

DISSENTING OPINION By Judge BROBSON.

I join in parts I through III of the majority opinion. I respectfully disagree, however, with the majority's conclusion in Part IV.B and the related provisions in its order enjoining application and enforcement of Sections 3305 through 3309 of what is commonly referred to as Act 13, 58 Pa.C.S. §§ 3305–3309, in their entirety.

If I read the majority's analysis in Part IV.A of its opinion correctly, the majority holds that Section 3302 of Act 13, 58 Pa. C.S. § 3302, with the exception of the last sentence in that section, is constitutional and, therefore, remains enforceable as to Chapter 32 of Act 13. This operative statutory language, preserved by the majority's opinion and order, provides:

> Except with respect to local ordinances adopted pursuant to the MPC and the act of October 4, 1978 (P.L. 851, No. 166), known as the Flood Plain Management Act, all local ordinances purporting to regulate oil and gas operations regulated by Chapter 32 (relating to development) are hereby superseded. No local ordinance adopted pursuant to the MPC or the Flood Plain Management Act shall contain provisions which impose conditions, requirements or limitations on the same features of oil and gas operations regulated by Chapter 32

or that accomplish the same purposes as set forth in Chapter 32.

58 Pa.C.S. § 3302. By enacting this statutory language, along with Chapter 32 of Act 13, the General Assembly has preempted the field of regulating the "how" of oil and gas operations within the Commonwealth.[1] *See Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont,* 600 Pa. 207, 964 A.2d 855, 862–63 (2009).

Notwithstanding its holding that Section 3302 as it relates to Chapter 32 remains effective and enforceable, the majority holds that the legislatively created procedures and remedies in Sections 3305 through 3309 of Act 13, 58 Pa.C.S. §§ 3305–3309, for review of and/or to challenge local ordinances that violate, *inter alia,* Section 3302 and, by extension Chapter 32 of Act 13, are unenforceable *in toto.* (*See* Maj. Op. at 1121–22.) The majority reasons that the General Assembly's decision to enact these procedures was built upon the continued constitutionality and thus enforceability of Chapter 33. With the Supreme Court's mandate in *Robinson Township v. Commonwealth,* —— Pa. ——, 83 A.3d 901 (2013) (*Robinson Twp. II* ), declaring all substantive provisions contained in Chapter 33 of Act 13 unconstitutional and thus unenforceable, the majority concludes that the continued availability of the procedures and remedies for redress of ordinances that violate Chapter 32 would no longer be consistent with the General Assembly's intent when it enacted those procedures and remedies. Accord-

---

1. Section 4 of the Act of February 14, 2012, P.L. 87 (Act 13), provides that "[t]he addition of Ch. 32 and 58 Pa.C.S. § 3302 is a continuation of the act of December 19, 1984 (P.L. 1140, No. 223), known as the Oil and Gas Act." It further provides that "[a]ny difference in language between 58 Pa.C.S. § 3302 and section 602 of the Oil and Gas Act is intended only to conform to the style of the Pennsylvania Consolidated Statutes and is not intended to change or affect the legislative intent, judicial construction or administration and implementation of section 602 of the Oil and Gas Act." Thus, the majority's reasoning for disregarding *Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont,* 600 Pa. 207, 964 A.2d 855 (2009), as discussed in footnote 27 of its opinion, ignores and conflicts with Section 4 of Act 13.

ingly, the majority concludes that the procedures and remedies in Sections 3305 through 3309 are not severable from the unconstitutional Sections 3303 and 3304 of Act 13 and, therefore, are no longer available remedies for violations of Section 3302. I respectfully disagree.

As the majority points out, Section 1925 of the Statutory Construction Act of 1972, regarding severability, provides:

> The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925 (emphasis added). In *Robinson Twp. II,* the Pennsylvania Supreme Court noted that this section creates a presumption of severability. *Robinson Twp. II,* 83 A.3d at 998. Unlike the majority, I do not perceive sufficient evidence of legislative intent within the express statutory language to override the presumption that Sections 3305 through 3309 are severable from invalid Sections 3303 and 3304. To the contrary, the language that the General Assembly chose in Sections 3305 through 3309 supports the presumption.

The remedial provisions in Sections 3305 through 3309 of Act 13 are available in three distinct situations. The first is where a local ordinance may violate the Municipalities Planning Code.[2] The second is where a local ordinance may violate Chapter 33, which includes the severed Sections 3303 and 3304 *as well as the remaining portion of Section 3302* of Act 13. And the third is where a local ordinance may violate Chapter 32 of Act 13. *See* Sections 3305(a)(1), (b)(1); 3306(1); 3308. Accordingly, the General Assembly decided that the procedures and remedies in Sections 3305 through 3309 would be available in each of three distinct circumstances. Unlike the majority, I am hard-pressed to conclude from the statutory language an intent by the General Assembly that links the availability of these remedial provisions *in toto* to the validity of two sections within Chapter 33 of Act 13— *i.e.,* a subset of only one of the three situations where the procedures and remedies are expressly available. I simply do not find sufficient evidence within this language to override the presumption of severability.

Unlike the majority, because the provisions in Act 13 that preempt the field with respect to the "how" of oil and gas operations remain effective, including the portion of Section 3302 that prohibits municipalities from entering into this field though local legislation, Sections 3305 through 3309 of Act 13 still have efficacy and are severable from the unconstitutional provisions of Act 13.

CONCURRING/DISSENTING
OPINION BY Judge McCULLOUGH.

Respectfully, I concur in part and dissent in part. I agree with the Majority's decision to dismiss Count V and Count XII of Petitioners' petition for review.

**2.** Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10701–10713.

However, I disagree with the Majority's dismissal of Count IV of the petition for review, insofar as it pertains to Petitioners' equal protection challenge to the notice requirements of 58 Pa.C.S. § 3218.1. Pursuant to this statutory proviso, the Department of Environmental Protection (DEP), upon receiving notice of a spill, must notify "public drinking water facilities" of the spill and the expected impact on water quality. *Id.* However, 58 Pa.C.S. § 3218.1 does not require that similar notice be provided to private well owners. At this stage of the proceedings, I cannot conclude that the statute's differentiation between public and private water suppliers bears a rational relationship to a legitimate governmental interest.

Even the Majority concedes "that the majority of gas drilling occurs in rural areas, that there is a greater reliance on private water suppliers in such areas, and that private wells are not subject to routine testing and monitoring of public water systems." (Maj. op. at 1112.) Nonetheless, the Majority upholds the classification predominately on the ground that "DEP doesn't regulate private water sources," "it is not feasible to require DEP to identify private wells that may be potentially affected by a spill," and "it is impossible for DEP to provide notice to these unknown private well owners." (Maj. op. at 1114.)

In my view, the reach of DEP's current regulatory scheme is insufficient to validate the difference in treatment between public and private water facilities. Just because an agency has not handled certain matters in the past does not give the General Assembly a license to draw classifications along those lines. Equally important, and as noted by the Majority, (Maj. op. at 1112–13 n. 15), 32 P.S. § 645.10(a), which has been in effect since 1956, mandates that the Department of Conservation and Natural Resources maintain records setting forth the location of private wells. Consequently, it appears that DEP would be able to obtain this information through inter-agency cooperation.

The Majority anticipates that "[e]ven though [DEP] is not required to do so, in the event of a spill, DEP will, in all likelihood, canvas the area to identify individuals served by private wells and notify them of the spill." (Maj. op. at 1114). While I do not doubt DEP's goodwill, the Majority declines to impose an affirmative legal duty on DEP to provide notice to private well owners. Accordingly, I would conclude that Petitioners stated a viable claim in Count IV.

I also disagree with the Majority's dismissal of Count XI of Mehernosh Khan, M.D.'s claim to the extent that it pleads an equal protection challenge to the disclosure of confidential information under 58 Pa.C.S. §§ 3222.1(b)(10) and (11).

Pursuant to 58 Pa.C.S. §§ 3222.1(b)(10) and (11), a "health professional" may obtain the identity and composition of chemicals used by the oil and gas industry to diagnose and treat an individual who may have been "exposed to a hazardous chemical" or in the case of an immediate "medical emergency." *Id.* However, when the chemicals or compounds are claimed to be a trade secret or confidential proprietary information, the health professional must sign a confidentiality agreement. *Id.* While the range and precise language of the confidentiality agreement is not known, it is a fair inference that a health professional will be unable to share the information in the peer-review setting, publish the clinical findings and proposed treatment plans in medical journals, or coordinate the outcome and treatment plans with other hospitals who later experience the same or a similar case.

Given these apparent restrictions in the confidentiality agreement, I would conclude that it is not clear and free from doubt that the statutory scheme furthers a legitimate interest because the statute has the effect of severely curtailing the medical community's ability to share and discuss solutions concerning chemical toxicity cases and symptomatic presentations that they may never have encountered. At the very least, the confidentiality agreement should allow open and frank communication throughout the medical community. Accordingly, I would conclude that Dr. Kahn stated a viable equal protection challenge to 58 Pa.C.S. §§ 3222.1(b)(10) and (11).

Finally, I would clarify the impact of the Majority's holding as to the non-severable provisions of Act 13, and the enjoinder or enforcement thereof. The legislative intent expressed in enacting Act 13 is in furtherance of the legislative policy recognized in *Huntley & Huntley, Inc. v. Borough Council of Oakmont*, 600 Pa. 207, 964 A.2d 855 (2009), that local municipalities may regulate "where" the oil and gas industry may operate but not "how."

As the Majority and our Supreme Court have stated, 58 Pa.C.S. § 3302, a replicate of section 602 of the Oil and Gas Act,[1] 58 P.S. § 601.602, is not severable from the provisions of Act 13 declared to be unconstitutional, namely, 58 Pa.C.S. §§ 3303 and 3304, to the limited extent that 58 Pa.C.S. § 3302 is applied to preempt local municipalities from regulating "where" the oil and gas industry may operate. I would further conclude that 58 Pa.C.S. § 3302 retains application separate and apart from these unconstitutional provisions and is severable insofar as it is consistent with the objectives enunciated in *Huntley & Huntley, Inc.* and does not regulate "where" the operation is located but only

"how" or in what manner it is operated, *i.e.,* 58 Pa.C.S. §§ 3201–3215(a), 3216–3274 or "Chapter 32 of Act 13." *See Huntley & Huntley, Inc.,* 964 A.2d at 864; *see also Department of Education v. The First School,* 471 Pa. 471, 370 A.2d 702 (1977) (concluding that a statute was severable and effectual in application where it was unconstitutional as applied to sectarian nonpublic schools, but constitutional as applied to nonsectarian nonpublic schools). The same can be said of 58 Pa.C.S. §§ 3305–3309 insofar as these provisions pertain and apply to the operational dictates of 58 Pa.C.S. §§ 3201–3215(a), 3216–3274. I understand the Majority opinion to be consistent with these observations, (*see* Maj. op. at 1120, 1121–22), and to the extent that it is, I would agree. Therefore, 58 Pa.C.S. §§ 3305–3309 should be severable in this regard also, and I would conclude that 58 Pa.C.S. §§ 3302, 3305–3309 are severable and maintain independent legal validity when applied to the statutory sections of Chapter 32 of Act 13.

Moreover, the Majority concludes that Petitioners failed to state cognizable claims challenging the constitutionality of 58 Pa. C.S. §§ 3218.1, 3241(a), and 3222.1(b)(10), (11). In effect, then, these provisions remain constitutional and operative.

In light of the above, and in the proper exercise of judicial restraint given the statutory scheme that is yet remaining, I would conclude that Act 13 is a sustainable piece of legislation to the extent of the noted surviving provisions. The Majority neither declares all of Act 13 to be non-severable nor enjoins the enforcement of Act 13 in its entirety. Although not referenced by the Majority, 45 P.L.E. STATUTES § 180 provides that "[t]he invalidity of a repealing law results in the prior law remaining in effect." Here, Act 13 repealed

---

1. Act of December 19, 1984, P.L. 1140, *as* *amended.*

the Oil and Gas Act. Since the Majority has not declared the entirety of Act 13 invalid or non-severable, the principle espoused in 45 P.L.E. STATUTES § 180 should not apply. The question then remains as to the viability of the Oil and Gas Act, which was repealed by Act 13. Because Act 13 has not been declared unconstitutional in its entirety, the prior Oil and Gas Act is still repealed by it. *Cf. Mitchell's Bar & Rest., Inc. v. Allegheny County*, 924 A.2d 730, 736 (Pa.Cmwlth.2007). It is, then, appropriately left to the General Assembly's discretion to determine whether to amend, replace, or repeal the remaining portions of Act 13 and revive the Oil and Gas Act.

With these observations being stated, I respectfully concur in part and dissent in part.